432 S.E.2d 740

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Timothy LAYTON, Defendant Below, Appellant.**

No. 21173.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided April 27, 1993.

Dissenting Opinion of Justice Miller July 23, 1993.

Rodney L. Bean, Asst. Atty. Gen., Charleston, for appellee.

Frank W. Helvey, Jr., West Virginia Public Defender Services, Charleston, for appellant.

BROTHERTON, Justice:

In this case the defendant, Timothy Layton, who was ultimately convicted of aggravated robbery and sentenced to serve forty-seven years in the State penitentiary, moved that his court-appointed counsel be permitted to withdraw and that he be allowed to conduct his own defense during his jury trial. The trial court, the Circuit Court of Jefferson County, granted the defendant's motion that he be allowed to defend himself. The court, however, denied his motion that the court-appointed attorney be allowed to withdraw. Instead, the court directed that the attorney remain in the case as standby counsel.

On appeal, the defendant claims that the trial court committed reversible error in allowing him to proceed *pro se* in his defense. He also claims that he was denied effective assistance of counsel and the right to testify meaningfully in his own behalf. Integral to, and critical to an understanding of these claims, is the fact that the trial court ruled that standby counsel was not to assist the defendant in testifying if he elected to take the stand and testify in his own defense. The court made this ruling when it appeared that the defendant was disposed to commit perjury on the stand and when standby counsel sought instructions on what he should do in view of the pending perjury.

The defendant, who walked away from a bench conference, also claims that he was denied his right to be present at a critical stage of his trial, and he argues that the indictment against him was fatally defective. Lastly, he claims that the sentencing process employed by the trial court was violative of due process of law.

This Court has reviewed the record, as well as the questions presented, and can find no reversible error. The judgment of the Circuit Court of Jefferson County is, therefore, affirmed.

The evidence in this case shows that on December 23, 1989, two armed, white

males entered a dairy store in Charles Town, West Virginia. One of the individuals stood by the store door with a shotgun while the other, identified as the defendant, brandished a pistol at the store's two employees and demanded money from them. The employees put money in a paper bag and gave it to the robber with a pistol. The employees were then forced to get on the floor, and the robbers left.

In fleeing from the store, the driver of the getaway pickup truck, driving without lights, swerved to miss another vehicle. As he, or she,[1] did so, the getaway truck ran into a ditch, hit a telephone pole and fence, and then returned to the road with a flat tire. Two men in the vehicle which the getaway truck narrowly missed followed the wobbling truck on State Route 9 in an attempt to obtain its license number. They retreated, however, when they saw a gun appear from the truck's right side window.

Another individual was in his car at a stop sign when he saw the getaway truck run off the road. He, too, followed for a short distance, but stopped when an individual in the truck fired two shots at him.

The State Police were notified of the robbery and were provided with a general description of the robbers. Two police officers received a radio report of the robbery and learned that the getaway vehicle had had a flat tire. The police officers, after proceeding to the dairy store, noticed intermittent gouge marks in the pavement of the road which appeared to have been made by a vehicle with a flat tire. They followed these marks to the top of a mountain to a point where the road turned into a trailer park. In the trailer park, they saw a truck which matched the general description of the getaway vehicle parked behind a cement block building. They also could see that the gouge marks led to the truck.

Shortly thereafter, police from a number of jurisdictions were summoned to the scene and took up positions around the trailer court. After they had taken up their positions, a yellow Mustang with three occupants approached from inside the trailer park. A police officer motioned for the driver to stop, and the driver, who was Terri Miller, and two passengers, the defendant and another male, Michael Tarmon, raised their hands above their heads. One of the passengers had a partially uncased shotgun. A search of the vehicle also revealed a pistol and ammunition, and a search of the defendant produced $220.00 in small bills. The defendant and Michael Tarmon, who matched the descriptions of the robbers, were then arrested and charged with the robbery of the dairy store.

On January 16, 1990, a Jefferson County grand jury indicted the defendant for aggravated robbery. Following the return of the indictment, a rather tortured and prolonged series of events occurred, including multiple changes of counsel and an abortive trial which resulted in a mistrial, before the trial which underlies the present appeal.

After the arrest of the defendant, the circuit court, on December 27, 1989, appointed F. Samuel Byrer to represent him. As the proceedings advanced, the defendant retained another attorney, Steven M. Askin, and at the defendant's request, the circuit court, by order dated February 13, 1990, relieved Mr. Byrer. Although Mr. Askin vigorously undertook to defend the defendant, the defendant failed to pay a promised retainer fee, and on June 4, 1990, Mr. Askin moved to withdraw as counsel. On June 6, 1990, the circuit court granted Mr. Askin's request and appointed Matthew E. Bieniek to represent the defendant.

Less than a month later, on July 13, 1990, Mr. Bieniek moved to withdraw after the defendant threatened to file an ethics complaint against him. The State resisted Mr. Bieniek's motion to withdraw on the ground that the defendant had intentionally created an ethics conflict as a delay tactic. However, during the consideration of the motion it came to the court's attention that Kevin Mills, who was represented by Mr. Bieniek, had represented Terri Miller, the female driver of the yellow Mustang. Upon learning this, the court grant-

1. There is some suggestion that the driver may have been a third party, a female, Terri Miller.

ed Mr. Bieniek's motion to withdraw and appointed David Sanders to represent the defendant.

Mr. Sanders, when he realized that he had conversed with Terri Miller concerning the robbery, moved to withdraw. The circuit court then re-appointed Mr. Byrer to represent the defendant.

While Mr. Sanders was representing the defendant, a motion was made to disqualify the Jefferson County Prosecuting Attorney and for appointment of a special prosecutor in the matter. The ground for doing this was that an attorney, Lawrence Crofford, who had represented co-defendant, Michael Tarmon, had joined the Jefferson County Prosecutor's office.

As development of this question proceeded, Mr. Byrer realized that he would likely be called as a witness on the motion for a special prosecutor. He, therefore, moved to withdraw as attorney for the defendant. The circuit court granted Mr. Byrer's motion and appointed Richard Gay to represent the defendant.

The defendant's case proceeded to trial on May 15, 1991. On the second day of trial, defense counsel, Richard Gay, moved for a mistrial. In an *in camera* hearing, Mr. Gay explained that he believed that the defendant intended to take the stand and commit perjury and that he, as an attorney, did not want to be a party to that perjury and that he did not want to participate in what he considered unethical and immoral conduct.

The trial judge attempted to propose a compromise and, after examining the question in the context of the Rules of Professional Conduct, suggested that Mr. Gay ask the defendant certain preliminary questions and then ask a general question

which would allow the defendant to testify in narrative form, without Mr. Gay's participation. Mr. Gay protested strenuously, and a recess was taken for lunch. Upon resumption of the hearing, again in the presence of the defendant, the State joined in Mr. Gay's motion for a mistrial. After some reflection, the court concluded: "[T]he Court has reached the somewhat agonizing conclusion that Mr. Gay should be permitted to withdraw in this case and we must have a mistrial." [2]

After the first trial ended in a mistrial, the circuit court appointed Scott Ollar to defend the defendant. The defendant also obtained the recusal of the first trial judge and obtained the appointment of Andrew Frye, Jr., to preside over his second trial.

In the second trial, the defendant was found guilty as charged and sentenced to forty-seven years in the State penitentiary. The present appeal focuses on events that occurred during the second trial.

## I.

The defendant's first assignment of error on appeal is that the trial court committed reversible error by allowing him to proceed *pro se* during his second trial. His real argument is that the trial court failed to conduct the *in camera* proceedings mandated in *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983), before allowing him to proceed *pro se* in his defense and that, as a consequence, it cannot be said that, prior to undertaking his own defense, he made a voluntary waiver of his right to counsel or that he understood his rights and the possible consequences of self-representation.

Approximately a week prior to the commencement of the second trial, the defen-

2. The remarks which occurred during this *in camera* hearing during which the perjury question was discussed were recorded by the official court reporter. The transcript of those remarks was sealed by the trial judge. In designating the record for the present appeal, defendant's counsel in the official "Designation of Record" filed on February 23, 1992, stated:

Comes now the defendant and hereby designates as the record on appeal the entire court file, including but not limited to, the entire

proceedings mechanically recorded in this action including voir dire, the opening and closing statements of all counsel, and all hearings conducted outside the presence of the jury. The sealed transcript of the mistrial hearing, like the record of most of the proceeding during the defendant's first trial, was subsequently included in the printed transcript filed with this Court in support of the defendant's petition for appeal.

dant informed defense counsel, Scott Ollar, that he no longer wanted Mr. Ollar to defend him and that he wished to defend himself. Mr. Ollar promptly, on August 23, 1991, wrote the trial judge about the development:

On Thursday, August 22, 1991, my office received two telephone calls from my client, Timothy Layton, with regard to the above-referenced matter. In these conversations, Mr. Layton informed both my staff and myself that it was his decision that I be relieved as counsel on his behalf and that he would be taking over his own defense at the trial of this matter, now scheduled to commence August 28, 1991, in Jefferson County. Upon my receiving the first message, I immediately informed attorney Charles Trump, special prosecutor in this matter, as I was in his office at that time.

It is my understanding that in a telephone conference concerning this matter on August 21, 1991, you were advised that Mr. Layton wanted to file a motion for my withdrawal. I understand you to have indicated that such a motion would be denied. I further understand you to have indicated that should I be discharged, I am to be appointed as counsel to assist him in his *pro se* defense. I have enclosed a proposed Order and a copy of correspondence forwarded to attorney Trump regarding his matter. Mr. Layton's entire file has been hand-delivered to him at the Eastern Regional Jail. I will provide what assistance I can, including secretarial support.

When trial actually commenced on August 28, 1991, the court, before a jury was selected, and in what was a *de facto in camera* situation, addressed the defendant's motions that Mr. Ollar be dismissed and that he be allowed to proceed *pro se*. Without much discussion, the court ruled that the defendant could represent himself, but denied the motion that the court-appointed attorney be allowed to withdraw. The court told the defendant: [3]

---

**3.** This occurred in a broader notification of the defendant's rights. The full colloquy proceeded as follows:

THE COURT: Mr. Layton, I will give you and your counsel a copy of your notice of your duties and your obligations in this case, and I will tell you that you have the right to be present during this trial and represented by an attorney to assist you. You have one appointed to represent you. You understand these rights as this case has already been before a jury as I understand it.

You also have been notified that you have the right not to be called as a witness on your own behalf and be compelled to incriminate yourself. You also have the right to elect to testify on your behalf just by voluntarily taking the stand, and you'd have the right then to be subject to cross examination. You and your attorney are to inform the Court of your decision no later than the closing of the State's case so that I can properly tell you what your rights are at that time.

You are also required to be present at every stage of the proceedings in this trial. Should you absent yourself voluntarily or otherwise, the trial will proceed in your absence. So do not leave this courtroom during the trial without—unless you have the permission of this Court. I understand that you're in the custody of the Sheriff, but do not leave the courtroom even in his custody unless you have my permission.

THE DEFENDANT: Yes, sir.

THE COURT: You also have to be notified that should you conduct yourself in a manner that is not acceptable, then you will be removed from the courtroom and the trial will proceed in your absence even though you are not there. Do you understand what your rights in the proceeding are?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I understand and received yesterday a motion by Mr. Ollar that you had dismissed him as counsel.

MR. OLLAR: Sir, before you go any further, just for your information, I wanted to bring it to your attention that Mr. Layton cannot read. So that anything that you ask him about, I just respectfully request that you read to him for the record.

THE COURT: And I did, and that's what I've just done.

MR. OLLAR: Yes, sir. I just want to make sure you understand.

THE COURT: Mr. Ollar was appointed by this Court to represent you back in May, I believe, the 16th.

MR. OLLAR: Six months ago.

THE COURT: And you do not have the right to dismiss him or fire him. I'm going to require him to stay as your attorney. If you do not desire to use him, that is your prerogative, but I will not delay the trial simply by your firing or attempting to fire your court-appointed attorney. The record will show in this case that you have had probably four previous attorneys. For some various reasons, they have all no longer represented you. And this case will proceed today with Mr.

[Y]ou do not have the right to dismiss him or fire him. I'm going to require him to stay as your attorney. If you do not desire to use him, that is your prerogative, but I will not delay the trial simply by your firing or attempting to fire your court-appointed attorney. The record will show in this case that you have had probably four previous attorneys. For some various reasons, they have all no longer represented you. And this case will proceed today with Mr. Ollar as your counsel there available to assist you.

The court also advised the defendant that if he did not want to use his attorney, he would proceed at his own prejudice or benefit as he saw fit, that the decision was his own, and that he would be subject to whatever happened. Specifically, the court said:

The fact that you do not desire to use him, you know, will be either to your prejudice or to your benefit as you see fit. However, as it turns out, it will be your decision and you will be subject to whatever happens. And you have your exceptions to the ruling of the Court.

Later, the court, again before the jury was selected, told the defendant that he was entitled to represent himself, but at his own peril. The defendant, at this time, indicated that he wanted counsel to give him advice and to cross-examine the crime victims. The court assured the defendant that defense counsel would be there.

Both this Court and the Supreme Court of the United States have recognized that a criminal defendant has a constitutional right to represent himself during a criminal trial. The Supreme Court of the United States' recognition of the right was expressed in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In the syllabus of that case, the Supreme Court stated:

The Sixth Amendment as made applicable to the States by the Fourteenth guarantees that a defendant in a state criminal trial has an independent constitutional right of self-representation and that he may proceed to defend himself *without*

Ollar as your counsel there available to assist

counsel when he voluntarily and intelligently elects to do so....

In *Faretta*, the Court went on to recognize that:

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored....

422 U.S. at 834, 95 S.Ct. at 2540–41, 45 L.Ed.2d at 581.

In syllabus point 7 of *State v. Sheppard, supra*, this Court similarly recognized that the West Virginia Constitution gave a criminal defendant a constitutional right to represent himself:

The right of self-representation is a correlative of the right to assistance of counsel guaranteed by article III, section 14 of the West Virginia Constitution.

In *Sheppard*, the Court further outlined the circumstances under which a defendant could proceed to represent himself in a criminal proceeding. In syllabus point 8, the Court stated:

A defendant in a criminal proceeding who is mentally competent and *sui juris*, has a constitutional right to appear and defend in person without the assistance

you.

of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which does not disrupt or create undue delay at trial.

In the body of *Sheppard,* the Court established rather detailed guidelines as to what a trial court must do to ascertain whether a criminal defendant has a full knowledge and understanding of his rights and of the risks involved in self-representation. The Court stated:

The determination of whether an accused has knowingly and intelligently elected to proceed without the assistance of counsel depends on the facts and circumstances of the case ... The test in such cases is not the wisdom of the accused's decision to represent himself or its effect upon the expeditious administration of justice, but, rather, whether the defendant is aware of the dangers of self-representation and clearly intends to waive the rights he relinquishes by electing to proceed *pro se* ... To this end, the trial court is required to conduct, on the record and out of the presence of the jury, an inquiry of the defendant, informing him of his rights and of the possible consequences of self-representation.

*Id.* 172 W.Va. at 671, 310 S.E.2d at 188.

In the present case, it is the defendant's claim that the trial court failed to conduct the *in camera* hearing on the record required by *State v. Sheppard* and, consequently, his conviction was tainted by the fact that he proceeded to represent himself.

A careful examination of the *Sheppard* case reveals that it focuses on the situation where a criminal defendant attempts to represent himself "without the assistance of counsel," and the opinion in the case repeatedly makes references to a defen-

dant who elects to proceed "without the assistance of counsel."

A number of courts have indicated that there is an important distinction between cases where a defendant elects to proceed *pro se* in his criminal defense without the assistance of counsel and the situation where he elects to proceed *pro se* with standby counsel, a situation sometimes referred to as "hybrid" representation.[4] As stated by the Superior Court of Pennsylvania:

There is, however, a distinction between the constitutional right to proceed *pro se* pursuant to a valid waiver of the right to counsel and the right to proceed *pro se* and with counsel.

*Commonwealth v. Palmer,* 315 Pa.Super. 601, 462 A.2d 755, 759 (1983).

*See also United States v. Robinson,* 783 F.2d 64 (7th Cir.1986); *Bontempo v. Fenton,* 692 F.2d 954 (3d Cir.1982); *People v. McKinney,* 62 Ill.App.3d 61, 19 Ill.Dec. 250, 378 N.E.2d 1125 (1978); *People v. Boswell,* 62 Ill.App.3d 1033, 19 Ill.Dec. 786, 379 N.E.2d 658 (1978); *People v. Lindsey,* 17 Ill.App.3d 137, 308 N.E.2d 111 (1974); *State v. Leady,* 679 S.W.2d 292 (Mo.App. 1984); *State v. Edwards,* 592 S.W.2d 308 (Mo.App.1979); *Clark v. State,* 717 S.W.2d 910 (Tex.Cr.App.1986), 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987); and *State v. Barker,* 35 Wash.App. 388, 667 P.2d 108 (1983).

These courts have also recognized that there is a substantial difference between the colloquy which must be conducted, or litany which must be followed, when a defendant elects to proceed wholly *pro se* as opposed to when he proceeds *pro se* with counsel.

In *State v. Barker, Id.,* the Washington court referred to seminal Texas law in the area and laid down the rule significant to the present case. The Washington court said that:

*Phillips v. State,* 604 S.W.2d 904 (Tx. Crim.App.1979), held that while there is

**4.** It has been suggested that there is a technical distinction between a "hybrid" counsel and a "standby" or "advisory" counsel situation. Note, 12 Val.L.R. 331, *The Accused as Co-Coun-* sel: *The Case for the Hybrid Defense* (1977). However, the courts have not, as yet, apparently generally recognized the distinction.

no right to hybrid representation, if it occurs the defendant is not entitled to admonishments about the dangers of self-representation.

> These admonishments are to be given to a pro se defendant to insure that he is informed of the dangers involved when he waives counsel. Although appellant partially represented him in this case, he was also fully represented by counsel. Thus, no question of waiver of counsel is involved. Absent such issue arising, we cannot conclude that the trial court erred in failing to admonish appellant as to the dangers, if any, of this form of hybrid representation.
>
> *Phillips,* at 908.

667 P.2d at 112.

In the *Barker* case, the Washington court recognized that while there was authority for the proposition that when an accused assumed functions which were at the core of the lawyer's traditional role, he must intelligently and knowingly waive his right to counsel. *Barker* went on, however, to indicate that where counsel played a substantial role in a hybrid, standby, or advisory counsel situation, the standard inquiries and admonitions, of the type mandated by this Court in *State v. Sheppard, supra,* where a defendant elected to defend himself *pro se* without the assistance of counsel, were not required. *Barker* suggested the reasons for the different rule where there was some assistance by standby or advisory counsel:

> [H]is [Barker's] ... attorneys ... handled all pretrial matters which included the omnibus hearing, two changes of plea, several motions for continuances, determinations of the mental competency of Barker, and several motions in limine. Moreover, his legal counsel made all the legal objections, handled the various legal issues which arose at trial, and presented and argued the jury instructions to the court....
>
> Hence, Barker had the advice and participation of experienced legal counsel who actively assisted in and conducted his defense throughout the pretrial proceed-

ings and at all stages of the trial itself. He was not subject to the same danger and disadvantages as one who proceeds without representation or one who has a mere technical advisor. Although Barker partially represented himself, he was also fully represented by counsel and consequently, the issue of waiver never arose. The trial court did not err by not insuring, on the record, that Barker was aware of the dangers and disadvantages of self-representation prior to appointing him as co-counsel.

667 P.2d at 113.

In *Commonwealth v. Palmer, supra,* the Pennsylvania court adopted essentially the same rule as the Washington court and did so apparently for the same reasons. It stated:

> Although the record of this case reveals that the lower court did not fully explore all matters relating to waiver during the colloquy, appellant was not, in fact, fully waiving his right to counsel. The arrangement worked out ... was that appellant's standby counsel would select the jury, make closing remarks, file post-trial motions, and confer with appellant during the trial. Appellant asserted his right to self-representation as to certain other aspects of the trial. Appellant was to appear *pro se* only for the purposes of opening statement and examination of witnesses.

462 A.2d at 758–59.

The Pennsylvania court went on to hold that the *Sheppard*-type colloquy was not required where a defendant represented himself *pro se* with counsel:

> We hold that in a partial waiver of right to counsel, where standby counsel has been appointed, the full requirements of 318(c) [a Pennsylvania criminal rule which required a *Sheppard*-type colloquy] need not be met.

462 A.2d at 759.

The same rule has been adopted in other jurisdictions. *See United States v. Robinson, supra; People v. McKinney, supra;* and *Clark v. State, supra.*

During trial in the case presently before this Court, standby counsel actually con-

ducted the bulk of the defendant's defense. The defendant made the opening statement and cross-examined two of the State's witnesses. He also, as will be explained later, testified in narrative form in his own behalf without the assistance of counsel, and made one of two closing arguments. Substantially all pre-trial work was performed by the defendant's various attorneys. During trial, standby counsel cross-examined six of the State's witnesses, and by direct examination, in effect, rehabilitated the cross-examination of one of the two witnesses that the defendant had cross-examined. Defense counsel examined all the defendant's witnesses except the defendant himself. Defense counsel also made a closing argument and handled all evidentiary and purely legal questions.

In the present case, the defendant, Timothy Layton, did not represent himself *pro se*, without the assistance of counsel, but, in fact, he had standby counsel and was thus in a hybrid, standby, or advisory counsel situation. It appears that standby counsel participated very extensively and, from a legal point of view, dominantly, during the defendant's trial.

In view of the circumstances, this Court believes that the facts of the present case are similar to those in *Commonwealth v. Palmer, supra; State v. Barker, supra; Clark v. State, supra;* and the others cited, which hold that in a hybrid, standby, or advisory-counsel situation it is not incumbent upon a trial court to conduct what amounts to a *Sheppard*-type colloquy and administer all the admonitions which are required in a situation where a defendant elects to proceed *pro se* without the assistance of counsel. Consequently, in view of the fact that the defendant in the present

case actually proceeded, substantially, with and through standby counsel, this Court does not believe that the trial court committed reversible error by failing to conduct fully the colloquy outlined in *State v. Sheppard, supra.*

In reaching this conclusion, the Court has focused upon the narrow and particular facts of this case which show that although the defendant initially indicated that he wished to proceed without counsel, during trial his standby counsel actually played the dominant role in his defense. Counsel was also consistently available for consultation. Although in such situations, where a defendant ostensibly represents himself in a criminal trial, but where standby counsel actually is consistently available and actually plays the dominant role in the defense, it is not reversible error for a trial court to fail to engage in the full litany outlined in *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983), this Court believes that even in the standby-counsel situation, the *Sheppard* litany is desirable and recommends that trial courts employ it.[5]

## II.

The defendant's next claims are closely interrelated. During trial it came to the court's attention that the defendant was disposed to perjure himself when he took the stand to testify in his own behalf. Upon learning of this, the trial court ruled that standby counsel, who had apparently requested instruction on how he should handle the situation, was not to participate in the questioning of the defendant if he elected to take the stand. On appeal, the defendant suggests that after this occurred, he took the stand without understanding that he had a right not to do so

**5.** It is obviously impossible to determine prior to trial what precise relative roles an attorney and a defendant acting *pro se* will perform in the defendant's defense in a hybrid, advisory counsel, or standby counsel situation. It is very possible that counsel will perform a less substantial role than counsel played in the present case.

As indicated in the body of this opinion, the Court's decision is predicated on the factual showing that counsel played a very major role in the defense.

In a situation where counsel's role is less substantial, the question of the waiver of the right to counsel would potentially play a more weighty role in the Court's thinking. In such a situation, the Court would reconsider the question of whether the complete *Sheppard* litany was necessary.

In this Court's view, the prudent approach for any trial court in a hybrid, advisory, or standby situation, would be for the court to follow the full guidelines of *Sheppard* and engage in the full *Sheppard* litany.

and that, in effect, he did not make a knowing and intelligent waiver of his right not to testify. He also claims that the court's ruling prohibiting the involvement of counsel unconstitutionally abridged his right to testify meaningfully in his own defense and prejudiced his case.

The record indicates that when it was suggested that the defendant might take the stand in his own behalf, the trial court, out of the presence of the jury, counseled him as follows:

Now, Mr. Layton, it's my understanding you may or may not want to take the stand and testify on your own behalf. You have the right to remain silent and require the State to prove you guilty beyond a reasonable doubt without taking the stand. And if you desire, an instruction will be tendered to the jury telling them that you have that absolute right and no inference can be drawn from the fact that you chose to remain silent.

Or you have the right to voluntarily waive that right to remain silent and take the stand and testify fully, fairly, and truthfully. But if you do so, you will be treated like any other witness, to be cross-examined by the State like any other witness can be. You need to talk with your attorney and advise the Court whether you desire to voluntarily waive your right to remain silent and want to take the stand, or whether you want to exercise your right to remain silent and not take the stand. Then you can decide

with your attorney whether you want the jury to be instructed about it or whether you want to remain silent about that.

The record also indicates that when the defendant had previously been tried on the indictment in issue, the judge during that previous trial had informed him of his right to testify in his own defense, and the defendant had apparently discussed the issue with his then counsel.[6]

It has been widely recognized that a criminal defendant has an unconditional right not to testify in his own defense. *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *Carter v. Kentucky*, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). It has been further recognized that if a defendant waives his constitutional right to remain silent and elects to take the witness stand in his own defense, the record must demonstrate that such waiver was knowingly, voluntarily, and intelligently made. *State v. Gibson*, 186 W.Va. 465, 413 S.E.2d 120 (1991); *State v. Robinson*, 180 W.Va. 400, 376 S.E.2d 606 (1988); and *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988).

In *State v. Neuman, Id.*, this Court explored the steps which a trial court should follow to insure that a criminal defendant understands his right to testify or not to testify in his own behalf. In syllabus point 7, the Court outlined the procedure to be followed, as follows:

**6.** A portion of the record of that previous trial, which is included in the printed record in the present appeal, shows the following:

COURT: ... Now Mr. Layton, do you understand that you have the right to testify?
DEFENDANT: Yes, sir.
COURT: Do you understand that if you wish to testify, then no one can prevent you from doing so?
DEFENDANT: Yes, sir.
COURT: Do you understand that if you do testify, the prosecutor will be permitted to cross-examine you?
DEFENDANT: Yes, sir.
COURT: Do you understand that you also have the right not to testify?
DEFENDANT: Yes, sir, I do.
COURT: And you understand that if you choose not to testify, then the jury will be

instructed that they cannot hold that against you?
DEFENDANT: Yes, sir.
COURT: Do you understand that if you choose to testify, the jury will be instructed that they are not at liberty to disregard your testimony simply because you have been accused of a crime. But rather they must give your testimony the same serious consideration and weigh it by the same factors as they consider and weigh the testimony of any other witness?
DEFENDANT: Yes, sir.
COURT: Mr. Gay, has the defense made a decision as to whether Mr. Layton will testify?
MR. GAY: Your Honor, the accused is not going to testify.

A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

█ A careful review of the present case indicates that the trial court advised the defendant of each of the four factors which a trial court must cover under the guidelines set forth in syllabus point 7 of *State v. Neuman, Id.* Specifically, the trial court informed the defendant that he had the right to waive his right to remain silent and take the stand and testify fully. The trial court informed him that if he elected to take the stand, he would be treated like any other witness and subject to cross-examination. The court further informed the defendant "[y]ou have the right to remain silent...." Lastly, the court told him that if he remained silent, an instruction would be tendered to the jury telling them that he had an absolute right to remain silent and that no inference would be drawn from the fact that he chose to remain silent.

The defendant previously, during his former trial, had been advised of the same rights, and it appears from the record that during the previous trial he, after he had clearly consulted with counsel, had made the determination not to testify. In the present case, in spite of the warning given by the trial court, he elected to testify.

It appears that the trial court precisely followed the guidelines laid down by this Court for advising a defendant of his rights relating to his taking the stand. The Court does not believe that the defendant could have more clearly been informed of those rights. Additionally, it appears that the defendant was advised of his right on two separate occasions during his two separate trials, and that at the time of his previous trial he was clearly represented by counsel.

In view of these circumstances, the majority can only conclude that the defendant elected to testify after being fairly informed of his rights.

It further appears from the record that appointed counsel's problem with assisting in the testimony of the defendant arose from the possibility that the defendant might perjure himself.

The fact that possible perjury on the part of the defendant came to the attention of the trial court, in this Court's opinion, presented the trial court with the extremely thorny problem of weighing three very substantial interests. As will be later discussed, on the one hand, the defendant had a significant, and very clearly defined, constitutional right to testify meaningfully in his own behalf—and to the assistance of counsel to assure that his testimony was, in fact, meaningfully presented. On the other hand, defense counsel had both a legal and ethical obligation to avoid aiding and abetting, and to avoid participating in any way, in the commission of perjury by the defendant. Lastly, the trial court had an obligation to take all reasonable steps to insure that justice was speedily administered, and the court was faced with a defendant who had apparently learned from his first trial that he could possibly abort the trial, and frustrate the administration of justice, by cloaking himself in his right to counsel and by then throwing his counsel in an impossible legal and ethical position by insisting that the attorney assist him in committing perjury.[7] Rather clear-

7. Although the record does not affirmatively show that the trial judge in the second trial was aware that the defendant's first trial resulted in a mistrial because the defendant's attorney during the first trial had refused to participate in the production of perjured testimony, the order memorializing the mistrial, an order entered on May 21, 1991, stated:

Whereupon the Court inquired of the parties as to whether or not they were ready to proceed, at which time counsel for the Defendant advised the Court that he had an irrecon-

ly, the trial judge faced the possibility of equipping the defendant with a legal device for indefinitely frustrating his on-going and later trials if he ruled that the defendant's right to counsel was so absolutely paramount to other legal and ethical considerations that the defendant could not be allowed to testify unless he was assisted by counsel.

■ While this Court has, of course, recognized that a criminal defendant has the right to effective assistance of counsel, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), the Court believes that the right is circumscribed by a requirement that the participation and assistance of counsel should be to promote the lawful administration of justice and not to promote the commission of some illegal act or to promote a disruption of justice outside the limits set by the law.

This conclusion is somewhat supported by utterances of the Supreme Court of the United States. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court suggested that the constitutional right of a criminal defendant to assistance of counsel contemplated reasonable professional assistance and further indicated that:

> Prevailing norms of practice as reflected in American Bar Association standards and the like, ... are guides to determining what is reasonable, but they are only guides.

*Id.* at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

In the later case of *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), the Supreme Court discussed the relationship of a defendant's right to counsel to the broad societal interest that the administration of justice not be corrupted by perjury. Although the *Nix* case is factually somewhat different from the case presently before this Court, it does contain discussions which point to the resolution of the problems raised by the assignment of error in the present case.

In the *Nix* case, a murder defendant who wished to establish a claim of self-defense, informed his attorney that he believed that the victim had a gun at the time the defendant killed him. The defendant, however, also clearly indicated that he had not seen the gun. Defense counsel advised the defendant that the existence of a gun was not necessary to establish a claim of self-defense and suggested that the defendant truthfully testify that he had not actually seen a gun. Shortly before trial, the defendant told his defense counsel, "If I don't say I saw a gun, I'm dead." Defense counsel then advised him that if he took the stand and testified falsely, it would be his duty, as counsel, to advise the court that the defendant was committing perjury. He also indicated that he would then attempt to withdraw as counsel.

The defendant ultimately took the stand and testified. Apparently because of his counsel's warning relating to what would happen in the event he undertook to perjure himself, the defendant refrained from stating that he saw a gun. On cross-examination he actually admitted that he had not

cilable conflict of interest with his client, and he asked the Court's leave to withdraw, and further counsel for the Defendant and the Defendant asked the Court that the Court declare a mistrial and appoint other counsel for the Defendant. The State opposed said motion. Thereupon the Court heard the argument of the parties, after which the Court, in accordance with what the Court perceives to the applicable rule, Rule 3.3 of the Rules of the Professional Conduct, convened an ex-parte hearing, during which the Prosecuting Attorney and the investigating officer, and all other persons except for the Defendant, his counsel appointed for the purpose of this hearing, Charlie Howard, and the Defendant's trial counsel Richard Gay were present.

At the conclusion of said ex-parte hearing, the parties all reconvened in open Court before the Court and the Court announced that based on what the Court had heard during the ex-parte proceeding, and considering the Rules of Professional Responsibility and considering certain matters of religious belief, the Court is of the opinion that the Defendant's motion should be granted. Accordingly, it is ORDERED and ADJUDGED that Mr. Gay's motion to withdraw, which is not opposed by his client Mr. Layton, is hereby granted and a mistrial is declared. It is further ORDERED that Scott Ollar, a discreet and competent attorney practicing before the bar of this Court shall be and is now appointed as counsel for the Defendant.

seen a gun in the victim's hand. At the close of the trial, the jury found the defendant guilty, and in the *Nix* proceeding the defendant sought federal habeas corpus relief, claiming that defense counsel, by giving him the warnings relating to what would happen in the event he attempted to commit perjury, had denied him effective assistance of counsel. The United States District Court for the Southern District of Iowa denied the petition for habeas corpus relief, but the Court of Appeals for the Eighth Circuit reversed the District Court's decision and ruled that, in effect, the defendant had been denied his Sixth Amendment to assistance of counsel when his attorney had refused to cooperate with him in the presentation of perjured testimony at trial. The Supreme Court of the United States, in its decision, reversed the ruling of the Eighth Circuit.

In reaching its conclusion in the *Nix* case, the Supreme Court discussed the right of counsel broadly and concluded that it did not extend so far as to require that a defendant receive the assistance of counsel in committing perjury. The Court stated:

> In *Strickland,* we recognized counsel's duty of loyalty and his "overarching duty to advocate the defendant's cause." ... Plainly, this duty is limited to legitimate, lawful conduct compatible with the very nature of a trial as a search for truth. Although counsel must take all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law. This principle has consistently been recognized in most unequivocal terms by expositors of the norms of professional conduct since the first Canons of Professional Ethics were adopted by the American Bar Association in 1908.

*Id.* 475 U.S. at 166, 106 S.Ct. at 994, 89 L.Ed.2d at 134. The Court proceeded to trace through various ethical standards the persistent presence of the principle that an attorney must not engage in deception of betrayal of the public. The Court then stated:

> These standards confirm that the legal profession has accepted that an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically insures that the client may not use false evidence. This special duty of an attorney to prevent and disclose frauds upon the court derives from the recognition that perjury is as much a crime as tampering with witnesses or jurors by way of promises and threats, and undermines the administration of justice.

*Id.* at 168–69, 106 S.Ct. at 995, 89 L.Ed.2d at 135–36.

In *Nix v. Whiteside, Id.,* the Supreme Court of the United States concluded that:

> Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely.* In *Harris v. New York,* [401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)] we assumed the right of an accused to testify "in his own defense, or to refuse to do so" and went on to hold:
>
> > [T]hat privilege cannot be construed to include the right to commit perjury. *See United States v. Knox,* 396 U.S. 77 [90 S.Ct. 363, 24 L.Ed.2d 275] (1969); *cf. Dennis v. United States,* 384 U.S. 855 [86 S.Ct. 1840, 16 L.Ed.2d 973] (1966). Having voluntarily taken the stand, the petitioner was under an obligation to speak truthfully....
>
> 401 U.S. at 225 [91 S.Ct. at 643, 28 L.Ed.2d 1].
>
> ... [T]he right to counsel includes no right to have a lawyer who will cooperate with planned perjury. A lawyer who would so cooperate would be at risk of prosecution for suborning perjury, and disciplinary proceedings, including suspension or disbarment.

*Id.* 475 U.S. at 173, 106 S.Ct. at 997, 89 L.Ed.2d at 138–39.

In adopting the Code of Professional Conduct, this Court has attempted to insure that an attorney's participation in legal matters occurs in a lawful way which promotes the ends of justice, within limits

generally considered proper and moral by society as a whole. The Rules of Professional Conduct adopted by this Court recognize, as did the Supreme Court of the United States, that the elucidation of true testimony is a circumstance which promotes the fair administration of justice, and, conversely, the Rules implicitly recognize that the elucidation of false evidence frustrates the proper administration of justice. It is for that reason that Rule 3.3 of the Rules of Professional Conduct circumscribes an attorney's right to elucidate false evidence. That rule states:

(a) A lawyer shall not knowingly: ... (4) offer evidence that the lawyer knows to be false. If the lawyer has offered material evidence and comes to know its falsity, the lawyer shall take reasonable remedial measures.

This Court has recognized, as have commentators on the Rules of Professional Conduct, that the circumscribing of a lawyer's right to proffer false evidence potentially comes into conflict with a client's right to representation by counsel. In discussing the rule, the official comment on it states:

The most difficult situation ... arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.

Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.

The other resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence.

At least one state, Connecticut, has addressed the question of what an attorney should do who is representing a criminal defendant when it comes to the attorney's attention that the defendant intends to commit perjury. The Committee on Professional Ethics of the Connecticut Bar Association has concluded that if the client insists on taking the stand and persisting in his intention to commit perjury, the lawyer must attempt to withdraw from the representation. If the court does not permit the lawyer to withdraw, the lawyer should refuse to conduct an examination of the defendant and should attempt to persuade the defendant to testify in narrative fashion. Connecticut holds that the lawyer is prohibited from providing any assistance to the client in the preparation or presentation of the false testimony or evidence, and, Connecticut further holds that an attorney may not use such evidence in argument of the case. *See ABA/BNA Lawyer's Manual on Professional Conduct* § 1001:2001 (1992).

In line with the thinking of the Supreme Court of the United States and the Bar of the State of Connecticut, this Court cannot conclude that a defendant's right to counsel is so broad as to include the right to counsel to assist in the commission of perjury. If the question of perjury had arisen for the first time during the trial which underlies the present appeal, it would have

been appropriate for the trial court to have declared a mistrial. However, since there had been a previous mistrial over the same issue, this Court believes that the trial court did the only thing possible to insure the appropriate administration of justice. The trial court essentially followed the technique outlined by the Commentary to Rules of Professional Responsibility and allowed the defendant to testify in narrative form. In so doing, the trial court appropriately weighed the conflicting interests involved and, in this Court's opinion, adopted a procedure which allowed the defendant to testify, which shielded the attorney from unethical and illegal conduct, and which advanced the societal interest in the administration of justice. This Court cannot conclude that in so doing the trial court erred.

■ In summary, this Court concludes that when a criminal defendant, who has elected to take the stand and testify in his own behalf, indicates to his attorney, or to the court, that he is contemplating committing perjury during his testimony, it is not error, or a denial of the criminal defendant's constitutional right to the assistance of counsel, for the trial court to direct the defendant's attorney to refrain from participating in the examination of the defendant on the stand and to rule that if the defendant wishes to testify, he must testify in a narrative fashion.[8]

### III.

In conjunction with the prior assignments of error, the defendant alleges that he was denied effective assistance of counsel.

A principal part of this assignment of error deals with the fact that the trial court refused to allow defense counsel to participate when the defendant himself took the stand. This essentially is the point discussed in Section II of this opinion and, as indicated in that discussion, this Court has concluded that, in line with the thinking of the Supreme Court of the United States in *Nix v. Whiteside, supra,* the trial court did not violate the defendant's constitutional right to effective assistance of counsel by refusing to allow defense counsel to participate in the examination of the defendant.

In addition to charging that he was denied effective assistance of counsel in conjunction with his own testimony on the stand, the defendant claims that his own participation in the trial, when he elected to proceed *pro se,* was ineffective and that by allowing him to proceed *pro se,* the trial, court, in effect, denied him effective assistance of counsel.

■ It has been recognized that when a criminal defendant elects to represent himself at trial, he cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel. *State v. Brincefield,* 43 N.C.App. 49, 258 S.E.2d 81 (1979); *State v. Frampton,* 737 P.2d 183 (Utah 1987). *See also Faretta v. California, supra.*

This blanket rule has also been carried over in the hybrid counsel situation. *See State v. Barker, supra.*

---

**8.** It appears that the Ninth Federal Circuit has recognized that allowing a perjuriously-minded criminal defendant to testify in a narrative fashion is an appropriate solution to the dilemma presented in situations such as the one in the present case. *See Lowery v. Cardwell,* 575 F.2d 727 (9th Cir.1978). In note 4 of that decision, the court said:

An ABA panel, which included then Circuit Judge Warren E. Burger, in commenting on a hypothetical case submitted to it in 1966, anticipated the Standards on the question of the proper method of dealing with the client who insists on taking the stand to commit perjury. Judge Burger states:

If in those circumstances the lawyer's immediate withdrawal from the case is either not feasible, or if the judge refuses to permit withdrawal, the lawyer's course is clear: He may not engage in direct examination of his client to facilitate known perjury. He should confine himself to asking the witness to identify himself and to make a statement, but he cannot participate in the fraud by conventional direct examination. Since this informal procedure is not uncommon with witnesses, there is no basis for saying that this tells the jury the witness is lying. A judge may infer that such is the case buy lay jurors will not."

Burger, Standards of Conduct: A Judge's Viewpoint, 5 Am.Crim.Law Q. 11, 13 (1966).

A more detailed rule, one which this Court believes is more appropriate to a situation such as the one which is presently before the Court, was enunciated by the Supreme Court of California in *People v. Bloom*, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698 (1989). In that case, the court stated:

> Defendants who have elected self-representation may not thereafter seek reversal of their convictions on the ground that their own efforts were inadequate and amounted to a denial of effective assistance of counsel. (*Faretta*, supra, 422 U.S. 806, 834–835, fn. 46, 95 S.Ct. 2525, 2541, fn. 46.) This rule applies whether or not the self-represented defendant has been assisted by an attorney acting as advisory counsel or in some other limited capacity. (See *Mullins v. Lavoie* (1982) 249 Ga. 411, 290 S.E.2d 472, 474; *Carter v. State*, (Ind.1987) 512 N.E.2d 158, 163–164; *State v. Hutchison* (Iowa 1983) 341 N.W.2d 33, 42; *Parren v. State, supra*, 309 Md. 260, 523 A.2d 597, 599; *State v. Harper* (Mo.App.1982) 637 S.W.2d 170, 173–174.)

> . . . . .

> To prevail on a claim that counsel acting in an advisory or other limited capacity has rendered ineffective assistance, a self-represented defendant must show that counsel failed to perform competently *within the limited scope of the duties assigned to or assumed by counsel.* (See *People v. Hamilton, supra*, 48 Cal.3d [1142] at pp. 1164–1165, fn. 14, 259 Cal.Rptr. 701, 774 P.2d 730); *People v. Doane, supra*, 200 Cal.App.3d [852] at pp. 864–866, 246 Cal.Rptr. 366), and that a more favorable verdict was reasonably probable in the absence of counsel's failings, (see *Strickland v. Washington* (1984) 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674; *People v. Fosselman* (1983) 33 Cal.3d 572, 584, 189 Cal.Rptr. 855, 659 P.2d 1144). A self-represented defendant may not claim ineffective assistance on account of counsel's omission to perform an act within the scope of duties the defendant voluntarily undertook to perform personally at trial. 259 Cal.Rptr. at 688–89, 774 P.2d at 717–18.

In the case presently before the Court, as previously indicated, the defendant chose to make the opening statement. He also cross-examined two witnesses and he made a closing statement in addition to the one made by his attorney.

In line with the thinking in the *Bloom* case, this Court generally believes that in view of the fact that the defendant himself elected to undertake portions of his representation, he cannot legitimately claim that he was denied effective assistance of counsel in those matters.

However, additionally, this Court notes that in the seminal case on the right of representation by counsel in West Virginia, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), it was stated that to establish a violation of the right to effective assistance of counsel, a criminal defendant not only has to show that his counsel's performance failed to conform with that of an attorney possessing the normal and customary skill possessed by attorneys who were reasonably knowledgeable in criminal law, but that the assistance of counsel rendered, because of its ineffectiveness, affected the outcome of the case. As stated in syllabus point 19 of *State v. Thomas:*

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

In the considerably later case of *Strickland v. Washington, supra,* the Supreme Court of the United States discussed effective assistance of counsel and the circumstances under which ineffective assistance of counsel would support the reversal of a

criminal defendant's conviction. In that case, the Supreme Court of the United States stated, in syllabus point 2:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or setting aside of a death sentence requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial ... (a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case ... (b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.

■ The record of the case presently before the court shows that the defendant made the opening statement, as previously indicated, and the State proceeded to present its evidence, which consisted of the testimony of nine witnesses. Two of the witnesses were the immediate victims of the robbery, and defense counsel, rather than the defendant, vigorously cross-examined those two witnesses. At least one of the immediate-crime witnesses suggested that the defendant was vaguely familiar from having been in the store robbed on previous occasions. The evidence further showed that the robbery occurred in a plainly-lighted store and that the defendant wore no disguise. He approached the witnesses with drawn gun and demanded money. Both witnesses unequivocally identified the defendant as the perpetrator of the crime in open court and under rather vigorous cross-examination steadfastly stood by their identifications.

The State called seven other witnesses, and defense counsel examined four of the seven. Neither the defendant nor defense counsel cross-examined the eighth, the co-defendant in the crime, who on the stand repeatedly indicated that he could not remember any of the circumstances relating to the time of the alleged crime. A number of the State's witnesses discussed the circumstances leading to the defendant's arrest. Those circumstances, as previously indicated, showed that upon immediately leaving the crime scene, the defendant, and apparently two accomplices, headed out in a truck and were almost involved in a vehicular accident. They suffered a flat tire and proceeded to cut a gouge mark in the road from the place of the robbery to the place of their ultimate apprehension.

In this Court's opinion, the fact that there were unshakable identifications of the defendant in open court by the immediate victims of the crime, as well as by the fact that the defendant and his accomplices literally cut a trail from the place of the crime to the place where they were apprehended and by the fact that they were apprehended with weapons in their possession which matched the weapons involved in the perpetration of the crime, all rather strongly point to the defendant's guilt in this case.

In examining the overall record in the case, in line with the standards established by the Supreme Court in *Strickland v.*

*Washington, supra,* this Court cannot imagine what evidence or what trial maneuver or tactic with any degree of reasonably probability could undermine this Court's confidence in the outcome of the case.

On the stand, the defendant himself denied committing the crime, and the jury had an opportunity to consider his testimony. The Court cannot see how a more skillful examination of the defendant could have adduced evidence which could effectively have undermined the State's case.

Given all the circumstances of the case, this Court cannot conclude that the defendant has made a sufficient showing of ineffective assistance to justify a reversal of his conviction.

### IV.

The defendant's next contention is that he was denied the constitutional right to be present at a critical stage of his trial.

During the presentation of the defendant's case, as previously indicated, defense counsel, rather than the defendant himself, called and examined a number of witnesses. After the last of these witnesses testified, defense counsel requested a recess until after lunch. The court, believing that it was too early to break for lunch, requested information as to why a recess was necessary for lunch at that time. It was brought to the court's attention that certain witnesses whom the defendant sought to call had not appeared. The court questioned defense counsel as to whether they had been subpoenaed. Defense counsel indicated that they had, though he was not certain whether the subpoenas had been served. The Court at that point ruled that there would be a break for lunch, but for the present the testimony would continue. The defendant, who had proposed to testify, indicated that he was not going to testify until the last witness testified. Defense counsel said, "If the last witness showed up, that is our last witness the court is saying." In response to defense counsel's statement, the defendant said, "This is bullshit," and left the bench. At that point, defense counsel stated:

Your Honor, I want to put something on the record here. I do not want to put on a witness that insists on putting on—knowing what's going to be said, I want an instruction from you indicating that I can put him on the stand.

The court said, "If you will ask him what he remembers?" Defense counsel said, "I don't want to ask him anything." The court said, "O.K. You may go back down." At that point, the bench conference was concluded and the trial continued with the defendant being present.

It appears from the record that defense counsel was at this point actually requesting instructions on what to do in view of the fact that he believed that the defendant intended to perjure himself at trial.

As indicated in the statement of this case, the defendant's first trial ended in a mistrial when it came to his attorney's attention that the defendant intended to commit perjury on the stand, and the attorney, Richard Gay, refused to participate in the perjury. Prior to the conference at which the defendant abruptly left the bench, which is the focus of his present allegation that he was denied his constitutional right to be present at a critical point in his second trial, the defendant apparently had informed Scott Ollar, his attorney during his second trial, that he again intended to perjure himself. It also appears that Mr. Ollar, like Mr. Gay during the first trial of the defendant, had brought this to the trial judge's attention. Prior to the conference which the defendant abruptly left, the court and defense counsel had discussed this problem in the presence of the defendant in the following colloquy:

THE COURT: Mr. Ollar, you and your counsel are advised that if you do believe your client wants to take the stand and wants to perjure himself, you and your associate will not participate in the question and answer period.

MR. OLLAR: Yes, sir. As you know, we've brought a potential conflict to the Court's attention once in the past, and I'd appreciate some instruction on how you wanted this to occur.

THE COURT: Well, if he desires to take the stand and his testimony is not going to be truthful, then you will not participate whatsoever in the questioning of this witness.

 Although the United States and West Virginia Constitutions guarantee defendants the right to be present at all critical stages of criminal proceedings against them, a defendant in a non-capital case, such as the one presently before the Court, may waive that right when he voluntarily absents himself from proceedings. *United States v. Martinez*, 604 F.2d 361 (5th Cir.1979), *cert. denied* 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980); *State v. Tiller*, 168 W.Va. 522, 285 S.E.2d 371 (1981). The rule is summarized in syllabus point 3 of the *Tiller* case, as follows:

Where a defendant in a noncapital case is free on bail and is initially present at trial, and thereafter voluntarily absents himself after the trial has commenced, and where he has been informed of his obligation to remain during all stages of the trial, then such voluntary absence will be deemed a waiver of his right to be present.

Shortly before the decision in the *Tiller* case, this Court adopted the West Virginia Rules of Criminal Procedure. One of those rules, Rule 43, deals with the presence of a criminal defendant during his trial. That rule states, in part:

Presence of the Defendant. (a) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. (b) *Continued Presence Not Required.* The further progress of the trial to and including the return of the verdict shall not be prevented and to

[sic] the defendant shall be considered to have waived his right to be present whenever a defendant, initially present: (1) Voluntarily absents himself after the trial has commenced where he has been initially informed by the court of his obligation to remain during all stages of the trial; ....

This West Virginia rule is modeled after and closely tracks Rule 43 of the Federal Rules of Criminal Procedure.[9]

In commenting on the Federal rule, the Federal Advisory Committee indicated that:

The second sentence of the rule is a restatement of existing law that, except in capital cases, the defendant may not defeat the proceedings by voluntarily absenting himself after the trial has been commenced in his presence, *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 ann. cas. 1913C1138; *United States v. Noble*, 294 F. 689 (D.Mont.)—affirmed 300 F. 689, C.C.A.9th; *United States v. Barracota*, 45 F.Supp. 38, S.D.N.Y.; *United States v. Vassalo*, 52 F.2d 699, E.D.Mich.

Commenting more recently on the rule, 3A Charles A. Wright, *Federal Practice and Procedure: Criminal 2d* § 723, 19–25 (1982), states:

In noncapital cases there has been almost no doubt. Despite a few contrary suggestions, it has been generally understood that defendant can waive his right to be present. He may do so expressly, though only with the consent of the court. Defendant has no right to be absent from the trial. Defendant may also waive his right to be present by not objecting to proceedings held in his absence.

Finally, a provision of the original rule now carried forward as Rule 43(b)(1) pro-

---

**9.** The Federal Rule states:
(a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. (b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present, (1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial),....

vides that a defendant waives his right to be present if he voluntarily absents himself from the court after the trial has commenced. The purpose of this is to prevent the defendant from obstructing the trial by absconding. If defendant is voluntarily absent, the court may continue the trial up to and including the return of the verdict. Defendant's absence must be found to be voluntary. It is not voluntary if defendant did not know that the trial was going on, but the court is not required to inform the defendant of his obligation to remain during trial ...

If the defendant has voluntarily absented himself, the court is authorized to proceed only up to the return of the verdict. It is not authorized to impose sentence until the defendant has returned.

The facts in the present case indicate that the defendant did appear for trial and, at the commencement of trial, was rather clearly informed of his right to be present at all stages of the trial. He was further notified that if he voluntarily absented himself, the trial would nonetheless proceed. The further facts show that the defendant voluntarily left the bench, apparently in a spate of anger.

In this Court's opinion, the defendant's actions constituted a waiver of his right to be present and his absence is insufficient to support a reversal of his conviction.

The Court further believes that, as shown by the quoted colloquy which had occurred in the presence of the defendant and which had occurred before the conference which the defendant left, the subject discussed in the defendant's absence, the perjury problem, was the same as that discussed earlier and that the trial court's conclusion was essentially the same as that reached earlier. In essence, what occurred in no way altered the stance of the trial judge nor in any way changed the course of the trial as previously established by the trial judge.

In *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court discussed what constitutes the critical stage of a criminal trial. The Court stated:

We conclude that a critical stage in the criminal proceeding is one where the defendant's right to a fair trial will be affected. Certainly, *Spaulding v. Warden, supra* [158 W.Va. 557, 212 S.E.2d 619 (1975)], teaches that if a preliminary hearing is held, it is a critical stage. Pretrial hearings involving substantial matters of law or the testimony of witnesses would be deemed critical. Entry of routine orders filing motions or court orders involving clerical or administrative matters in connection with the criminal proceeding do not require the presence of the accused. Likewise, consultation between defense counsel, the prosecutor and the court prior to the actual trial are not deemed a critical stage. Because of the impact of the right to a speedy trial, matters surrounding a continuance should require the presence of the defendant. Generally, all matters starting with the commencement of the actual trial require the presence of the accused through final judgment.

However, the critical stage requirement is, as noted in *Grob* [*State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975)], subject to the harmless error test. Consequently, there are two defenses available when it is claimed that the accused's absence creates reversible error. The first is that the absence occurred at a non-critical stage of the criminal proceeding. The second is that even if at a critical stage, it was harmless error.

*Id.* 160 W.Va. at 246–47, 233 S.E.2d at 719.

Even if the defendant in the present case had not waived his presence under Rule 43 of the West Virginia Rules of Criminal Procedure, as previously discussed, it is apparent that what occurred in the defendant's absence was a rehash of what had previously occurred. The trial court had previously, clearly, in the presence of the defendant, informed defense counsel that if counsel believed that the defendant wanted to take the stand and wanted to perjure himself, defense counsel was not to participate in the question and answer period. That was precisely what the court did later during trial after the defendant abruptly

left the bench conference and was momentarily absent.

■ Since nothing occurred in the bench conference while the defendant was absent which had not already occurred in the defendant's presence, and since no ruling was made or matter discussed which had not previously been made or discussed, in the Court's view the bench conference from which the defendant was absent, even though a critical stage, was not a point at which harmful error occurred. In essence, any error committed by the court's acting in the defendant's absence was harmless error.

### V.

The defendant next claims that the indictment returned against him was fatally defective because it was founded solely upon the hearsay testimony of an incompetent witness.

■ It has generally been recognized that the validity of an indictment is not affected by the character of the evidence adduced before the grand jury and an indictment valid on its face is not subject to challenge by virtue of the fact that the grand jury considered incompetent or inadequate evidence in returning the indictment. *State v. Bonham,* 184 W.Va. 555, 401 S.E.2d 901 (1990); *State ex rel. Pinson v. Maynard,* 181 W.Va. 662, 383 S.E.2d 844 (1989); *Barker v. Fox,* 160 W.Va. 749, 238 S.E.2d 235 (1977); *State v. Slie,* 158 W.Va. 672, 213 S.E.2d 109 (1975); *State v. Riley,* 151 W.Va. 364, 151 S.E.2d 308 (1966). Relating to this point, the Court stated, in the syllabus of *Barker v. Fox, supra,* that:

Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.

In light of this, the defendant's assignment of error relating to the indictment is without merit.

### VI.

Lastly, the defendant claims that the sentencing process was violative of due process of law.

After the jury had returned its verdict in the present case, the defendant requested that the trial court proceed with sentencing in the following colloquy:

THE COURT: Is there any reason that anyone can think why based upon the interrogatory of the jury, that sentence should not now be imposed?

THE DEFENDANT: No. Please sentence me now.

THE COURT: Sir?

THE DEFENDANT: Sentence me now, please.

THE COURT: Well, you're entitled to file certain pretrial motions or post trial motions, and I understand that. But based upon this jury's verdict, you know, and your attorney's told you, you are not eligible for probation.

THE DEFENDANT: I understand that, sir.

At that point, the trial court proceeded to sentence the defendant to forty-seven years in the State penitentiary.

There is some indication in the documents filed with this Court that prior to the indictment giving rise to the present case, the defendant had been convicted of a prior felony.[10]

■ Rather clearly, under West Virginia's recidivist statute, *W.Va.Code,* 61–11–18, a prior felony conviction may be used to enhance a sentence imposed upon a criminal defendant.

Given this circumstance, it appears to this Court that there was a plausible tactical reason for the defendant to seek the immediate imposition of a sentence at the conclusion of his trial. It does not appear that a recidivist information was filed prior to the defendant's sentencing, and clearly, if there had been a delay in the sentencing process and a presentence investigation in the matter, the presentence investigation report, if properly prepared pursuant to the provisions of Rule 32(c)(2), would have con-

---

**10.** The defendant's own brief suggests that he

■ had a prior felony conviction.

tained the defendant's prior criminal record.

Rule 32 of the Rules of Criminal Procedure contemplates that a presentence investigation may be waived and also contemplates that the defendant and his counsel be afforded to present information in mitigation of punishment.

■ In the present case, it is the Court's opinion that the trial court, although it did not follow the ideal procedure, did generally conduct the sentencing in conformity with appropriate legal standards.

The defendant, on appeal, suggests that he did not meaningfully waive his right to a presentencing report. However, it does appear to this Court, as previously indicated, that the defendant had a tactical reason for not wanting a presentence investigation report, and a fair reading of the record suggests that the trial court in no way forced the defendant to be sentenced at the conclusion of trial. Instead, the defendant, if the record is fairly read, encouraged the court to proceed with the sentencing immediately.

From the briefs in the case, it is not altogether clear as to what the defendant's true complaint relating to the sentencing procedure is. At one point he complains that Michael Tarmon, the codefendant in the case who plead guilty, received only a fifteen-year sentence, whereas the defendant received a forty-seven-year sentence.

■ As a general proposition in West Virginia, it has been recognized that if a sentence is within statutory limits and not based on some impermissible factor, it is not subject to appellate review. *State v. Bennett,* 172 W.Va. 123, 304 S.E.2d 28 (1983); *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982); *State v. Rogers,* 167 W.Va. 358, 280 S.E.2d 82 (1981). The rule is summarized in syllabus point 4 of *State v. Goodnight, supra,* as follows:

> Sentences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review.

■ It appears to the Court that the defendant's participation in the crime charged was somewhat different from that of codefendant Michael Tarmon. It also appears that the sentence imposed on the defendant was within the limits set by statute, and overall, the Court cannot conclude that there is any showing that the sentence imposed was based on some impermissible factor.

In view of the overall circumstances surrounding the sentencing and the sentence imposed upon the defendant, this Court cannot conclude that the defendant's assignment of error relating to the sentencing procedure is sufficiently meritorious to support a reversal of his conviction.

For the reasons stated, the judgment of the Circuit Court of Jefferson County is affirmed.

Affirmed.

MILLER, J., concurs in part and dissents in part, and files separate opinion with which McHUGH, J., joins.

MILLER, Justice, dissenting:

(filed July 23, 1993)

Although the majority gives lip service to the Sixth Amendment right to counsel, it fails to understand its application to the facts of this case where the defendant wished to proceed *pro se* and waive his right to assistance of counsel. We discussed this question at some length in *State v. Sheppard,* 172 W.Va. 656, 310 S.E.2d 173 (1983), where we relied on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and its progeny. We concluded in Syllabus Point 8 of *Sheppard:*

> "A defendant in a criminal proceeding who is mentally competent and *sui juris,* has a constitutional right to appear and defend in person without the assistance of counsel, provided that (1) he voices his desire to represent himself in a timely and unequivocal manner; (2) he elects to do so with full knowledge and understanding of his rights and of the risks involved in self-representation; and (3) he exercises the right in a manner which

does not disrupt or create undue delay at trial."

*Sheppard* went on to explicitly outline the type of inquiries that should be made by a circuit judge in order to determine on the record that the accused has made a knowing and voluntary waiver of his Sixth Amendment right to counsel:

"It is the primary duty of the trial court in conducting its inquiry to ascertain whether the defendant is cognizant of and willing to relinquish his right to assistance of counsel, since there can be no valid exercise of the right of self-representation absent a competent and intelligent waiver of the right to counsel.... The trial court should also insure that the accused is aware of the nature, complexity and seriousness of the charges against him and of the possible penalties that might be imposed....

"It is incumbent upon the trial court to warn the accused of the 'dangers and disadvantages of self-representation.' ... In this context it has been held that the trial court has an obligation to warn the accused that self-representation is almost always detrimental, that he will be afforded no special indulgence or advocacy privileges by the court; that he will be subject to all the technical rules of substantive, procedural and evidentiary law; that the prosecution will be represented by an experienced attorney; that misbehavior or disruption at trial may vacate his right to represent himself; and that in spite of his efforts he cannot later claim ineffective assistance of counsel.... In addition, the trial court should advise the defendant that he waives his right to refuse to testify by going outside the scope of argument and testifying directly to the jury....

"Finally, the trial court should make some inquiry into the defendant's intelligence and capacity to appreciate the consequences of his decision. In this respect, the defendant's background, education, experience and familiarity with the legal system are relevant consider-ations in the trial court's determination of the validity of the defendant's election to proceed *pro se.*" 172 W.Va. at 671–72, 310 S.E.2d at 188–89. (Citations omitted).

This type of searching inquiry was not made in this case by the trial court. However, the majority decimates *Sheppard* by concocting a hybrid test where standby counsel is utilized. The only problem is that the standby counsel in this case was at odds with the defendant. No consideration is given to this fact by the majority. Finally, I believe the majority has improperly analyzed the perjury issue, as did the trial court, to the extent that the defendant's right to testify was seriously impaired.

## I.

The Sixth Amendment of the United States Constitution, applicable to the states by virtue of the Fourteenth Amendment, clearly guarantees any defendant brought to trial the right to assistance of counsel before he may be validly convicted and punished by imprisonment.[1] As the United States Supreme Court has stated: " '[The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty.... The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done." ' *Johnson v. Zerbst*, 304 U.S. 458, 462 [58 S.Ct. 1019, 1022, 82 L.Ed. 1461, 1465] (1938)." *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799, 804–05 (1963). A corollary of this safeguard to one's fundamental human rights of life and liberty is the right of an accused to *reject* assistance of counsel, and to defend himself at trial. *Faretta v. California, supra; State v. Sheppard, supra.* As the *Faretta* court stated:

"Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his

---

**1.** *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois v. Allen,* 397 U.S. 337, 350–351, 25 L.Ed.2d 353, [363,] 90 S.Ct. 1057 [, 1064 (1970) ] (Brennan, J., concurring)." 422 U.S. at 835, 95 S.Ct. at 2540–41, 45 L.Ed.2d at 581.

As the majority purports to recognize, the United States Supreme Court in *Faretta* and our holding in *Sheppard, supra,* have made clear that before one may waive *"many of the traditional benefits associated with the right to counsel ... the accused must, 'knowingly and intelligently' forego those relinquished benefits."* *Faretta v. California,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581, *citing Johnson v. Zerbst,* 304 U.S. at 464–65, 58 S.Ct. at 1023, 82 L.Ed. at 1466–67. (Emphasis added).[2] From the record, it is clear to me that the defendant was upset with his counsel's representation and his counsel was equally frustrated with the defendant. It reached the point where several days prior to trial, counsel delivered his file to the defendant who was in jail, indicating to him that he could represent himself. Counsel was aware that the defendant could neither read nor write. This matter was brought to the attention of the trial court, but I do not believe it fully grasped the extent of their disagreement nor of the defendant's illiteracy.

The majority also fails to grasp these key facts. It spends several pages of its opinion discussing the procedural aspects of the defendant's first trial which ended in a mistrial. 189 W.Va. at 473–474, 432 S.E.2d at 743–744. This is not relevant to the issues raised at the second trial except to indicate to the reader that the defendant had difficulties with other counsel and, according to his trial counsel, intended to commit perjury. I do not believe that the majority would sanction this type of information being given to the jury in the second trial, even though it now details the second trial at great length to the reader of its opinion.

The majority does not address the critical lapse that occurred when the trial court failed to ascertain whether a true breakdown in communication had occurred between the defendant and his attorney, as required under Syllabus Point 5 of *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977).[3] Moreover, the majority circumvents *Sheppard* by holding that the presence of and assistance by counsel at trial avoids the necessity of a full *Sheppard* inquiry when the defendant elects self-representation. I find the cases used by the majority easily distinguishable.

### A.

None of the cases cited by the majority deal with the factual situation presented here, where there was a substantial breakdown in communication between the defendant and his counsel, and the defendant was allowed the right to *pro se* representation. Moreover, none of the cases cited by the majority dealt with a situation where the defendant was as illiterate as the defendant in this case. The majority cites extensively from the Washington intermediate court's decision in *State v. Barker,* 35 Wash.App. 388, 667 P.2d 108 (1983), where it was concluded that the defendant, de-

---

**2.** The Sixth Circuit Court of Appeals in *United States v. McDowell,* 814 F.2d 245 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), required that district courts under its jurisdiction question defendants who wished to proceed *pro se* in accordance with guidelines for such an inquiry found in 1 *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986). Only if such an inquiry is made in accordance with the *Bench Book* will a defendant be found to have knowingly waived his right to counsel.

**3.** Syllabus Point 5 of *Watson* states:

"Good cause for the relief of a court-appointed counsel consists of: (1) a conflict of interest; (2) a complete breakdown in communication with court-appointed counsel after the exhaustion of good faith efforts to work with counsel; or, (3) an irreconcilable conflict which might lead to an unjust verdict."

spite actively participating in his own defense, had been *"fully represented by counsel,"* such that the issue of waiver never arose. 35 Wash.App. at 393, 667 P.2d at 113. This conclusion seems to fly in the face of logic. Certainly, one who *actively* undertakes his own defense was not "fully represented by counsel."

*Commonwealth v. Palmer*, 315 Pa.Super. 601, 462 A.2d 755 (1983), also cited by the majority, is clearly not on point. That intermediate court noted that although the trial court therein had not "fully explor[ed] all matters relating to waiver during the colloquy," 315 Pa.Super. at 609, 462 A.2d at 758–59, neither had the defendant fully waived his right to counsel. The majority distorts *Palmer* by merely noting that the intermediate court held "that in a partial waiver of right to counsel, where standby counsel has been appointed, the full requirements of 318(c) [a Pennsylvania criminal rule which required a *Sheppard*-type colloquy] need not be met." 189 W.Va. at 478, 432 S.E.2d at 748, *citing* 315 Pa.Super. at 610–11, 462 A.2d at 759. The majority fails to recognize, however, that the *Palmer* court went on to state in the next sentence that *"[i]t is sufficient if the court instructs the accused on those aspects of the trial for which he seeks to represent himself."* 315 Pa.Super. at 611, 462 A.2d at 759. Unlike *Palmer*, the trial court herein did not instruct Mr. Layton on *any* aspect on the trial for which he chose to represent himself, beyond a general discouragement and notice that Mr. Layton would be held to appropriate standards of conduct.

Another case cited by the majority that is not on point is *United States v. Robinson*, 783 F.2d 64 (7th Cir.1986). In that case, the defendant never sought to waive counsel. He merely requested, *with the advice and guidance of his counsel*, that he be permitted to make an unsworn statement to the jury during closing arguments. That request was granted. *Robinson* is clearly distinguishable from this case because the defendant neither sought to waive his right to counsel nor did he so waive that right.

The same problems exist with the majority's citation to *Clark v. State*, 717 S.W.2d 910 (Tex.Crim.App.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987), where the Texas Court of Criminal Appeals found that the defendant had not "ever actually made demand of the trial judge that he be permitted to personally represent himself, but ... that at times the [defendant] was permitted to personally inject himself and his views into the case." 717 S.W.2d at 918. Again, *Clark* is obviously different from the present case where Mr. Layton specifically demanded that he be permitted to represent himself and did more than merely personally inject himself and his views into the case.

The final case cited by the majority in support of its view that *Faretta* warnings are unnecessary in a hybrid counsel situation is *People v. McKinney*, 62 Ill.App.3d 61, 19 Ill.Dec. 250, 378 N.E.2d 1125 (1978). In that case, the Illinois intermediate court relied on a pre-*Faretta* decision, *People v. Lindsey*, 17 Ill.App.3d 137, 308 N.E.2d 111 (1974), in its interpretation of the Illinois statute, Rule 401(a), Ill.Rev.Stat. ch. 110A, para. 401(a) (1975). This statutory provision codified the procedure to be used before permitting an accused to waive his right to counsel. The intermediate court adopted the *Lindsey* court's finding that a waiver of counsel is ineffective unless an accused "informs a court that he does not wish counsel; that he wants to stand alone." 62 Ill.App.3d at 65, 19 Ill.Dec. at 253, 378 N.E.2d at 1128, *citing Lindsey*, 17 Ill.App.3d at 140, 308 N.E.2d at 114. No discussion of *Faretta* or an accused's rights under the Sixth Amendment is found in either case. Consequently, in the absence of such a discussion, *McKinney* is meaningless to our present case.

### B.

On the other hand, several courts that have squarely addressed the Sixth Amendment issue of waiver have found that *Sheppard*-type warnings are necessary *whenever* an accused receives less than "full representation" by counsel, even if counsel undertakes "substantial" representation of

the accused. *See Hamilton v. State*, 30 Md.App. 202, 205–06, 351 A.2d 153, 155 (1976), *citing Faretta, supra* (where the record of the case established that "assigned counsel participated *substantially* but not exclusively in the management of the conduct of the trial.... [T]he fact that an accused was assisted by counsel in the course of the ensuing trial is of no moment in the determination whether the right to self-representation has been denied." [Emphasis added] ).

Moreover, several federal courts have addressed the waiver of counsel question in cases where standby counsel participated. These courts are of the view that a full explanation must be given of the waiver of the right to counsel. The First Circuit Court of Appeals in *Maynard v. Meachum*, 545 F.2d 273, 277 (1st Cir.1976), stated:

"We can conceive of no reason why the standard for waiving part of a constitutional right should be different from the standard for waiver of the entire right. Respondent argues, and we agree, that it is within the discretion of a trial court to allow the sort of hybrid arrangement that was adopted in this case, *see, e.g., United States v. Hill*, 526 F.2d 1019 (10th Cir.1975); *United States v. Guanti*, 421 F.2d 792 (2d Cir.1970). But it does not follow that such an arrangement is the equivalent of full representation by counsel for purposes of waiver.... On respondent's analysis, the right to counsel is satisfied, regardless of the reality of self-representation, so long as counsel is not formally allowed to withdraw and remains in the courtroom. We do not believe that the protections of this right that have evolved from *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), can be so casually swept away."

The Tenth Circuit Court of Appeals endorsed the *Maynard* court's view in *United States v. Padilla*, 819 F.2d 952, 960 (10th Cir.1987), where it stated:

"Anything less than full representation by counsel raises the question of valid waiver of the right to counsel.... Even if appointment of standby counsel is con-templated, the district court must fulfill its affirmative responsibility of ensuring defendant is aware of the hazards and disadvantages of self-representation."

Applying the foregoing reasoning to the instant case, it seems clear that the *amount* of participation in the trial by standby counsel is not the correct criteria upon which to base a determination of whether or not an accused has adequately waived his Sixth Amendment right to counsel. Rather, such a decision must be based upon a determination of who maintains "actual control" over the presentation of the accused's defense. If, as in this case, the trial court places the "actual control" of the case in the hands of the accused, allowing him to decide strategy and what use to make of counsel, it is clear that the accused has relinquished "many of the traditional benefits associated with the right to counsel." *Faretta, supra*. In such a situation, "the accused must 'knowingly and intelligently' forego those relinquished benefits."

The foregoing analysis was recently adopted by the Supreme Court of California in *People v. Jones*, 53 Cal.3d 1115, 1142, 282 Cal.Rptr. 465, 481, 811 P.2d 757, 773 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 631 (1992), wherein it was stated:

"A defendant's entitlement to *Faretta* warnings turns on which form of representation the defendant selects. If the defendant chooses self-representation, *Faretta* requires that the defendant be warned of the dangers and pitfalls of doing so. (*Faretta v. California, supra*, 422 U.S. at p. 835, 95 S.Ct. at p. 2541 [45 L.Ed.2d at pp. 581–82].) These warnings must be given even when the defendant has counsel to assist in an advisory capacity. So long as the defendant, by choosing to act as his or her own attorney, has assumed responsibility for the case, the defendant has forfeited the right to have an attorney make the critical strategic and tactical decisions pertaining to the defense and has thus waived the right to counsel. In such a situation, the record must show that the defendant 'understood the disadvantages of self-representation, including the risks

and complexities of the particular case.' (*People v. Bloom, supra,* 48 Cal.3d at p. 1225, 259 Cal.Rptr. 669, 774 P.2d 698.)

"If, on the other hand, a defendant chooses to be represented by counsel and the trial court allows the defendant a limited role as cocounsel, the defendant has not waived the right to counsel. The defense attorney retains control over the case and can prevent the defendant from taking actions that may seriously harm the defense. In that situation, the trial court may, but need not, warn the defendant of the problems of being cocounsel."

I believe the approach of the Supreme Court of California in *People v. Jones, supra,* is preferable to that chosen by the majority. Rather than merely quantifying the amount of participation by standby counsel, as does the majority, the California test goes to the heart of the right to be protected, the right to assistance of counsel, that, as we have seen, is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. *People v. Jones, Faretta,* and in my opinion *Sheppard* as well, require that where an accused requests that he be permitted to proceed *pro se,* and is permitted by the trial court to either proceed *pro se* or to exercise actual control over his defense, and the accused does, in fact, exercise actual control over his defense, he must make a knowing and intelligent waiver of his right to counsel.

In this case, the accused requested that he be permitted to proceed *pro se.* The trial court granted him this right, but allowed him to make use of standby counsel if he desired. The defendant proceeded to actively represent himself through the examination of several witnesses. It appears from the record that the defendant chose how to make use of standby counsel. Certainly, the defendant did not receive full representation by counsel. I find the failure to give a full explanation to the defendant as to his Sixth Amendment right to counsel resulted in a lack of a knowing and intelligent waiver of this right. This failure constituted reversible error.

## II.

Section II of the majority opinion discusses the conflicting obligations imposed upon a lawyer when he suspects that his client may offer perjured testimony to the court. On the one hand, a lawyer has a duty to zealously represent his client and to keep all discussions with his client confidential. On the other hand, a lawyer has a duty, as an officer of the court, to guard against a knowing subornation of perjury. The complexity of this issue raises not only questions of attorney-client relations, but also more serious constitutional implications as well, including an accused's right to testify, his right to counsel, and his fundamental due process rights. The majority has failed to understand these complexities as well as the facts surrounding the alleged attempted perjury.

The Supreme Court in *Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971), stated that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." (Citations omitted).[4] The foregoing principle is embodied in Rule 3.3 of the Rules of Professional Conduct, which states, in pertinent part:

"(a) A lawyer shall not knowingly:

\* \* \* \* \* \*

(4) offer evidence that the lawyer knows to be false. . . .

\* \* \* \* \* \*

**4.** In *Faretta,* the Supreme Court stated that "[t]his Court has often recognized the constitutional stature of rights that, though not literally expressed in the document, are essential to due process of law in a fair adversary process. It is now accepted, for example, that an accused has a right ... to testify on his own behalf[.]" 422 U.S. at 819 n. 15, 95 S.Ct. at 2533 n. 15, 45 L.Ed.2d at 572 n. 15. (Citations omitted). *See also Rock v. Arkansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37, 44–45 (1987); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 993, 89 L.Ed.2d 123, 133 (1986).

**498**

"(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false."

It is clear that a lawyer has an affirmative duty not to offer evidence he *knows* to be false.[5] Furthermore, a lawyer *may*, at his discretion, refuse to offer evidence he *"reasonably believes"* to be false. Neither the Rules of Professional Conduct nor the Official Comment thereto addresses the more difficult question of upon what basis a lawyer may "reasonably believe" that his client's intended testimony will be false and thereby refuse to offer such evidence to the court.

The majority glosses over this issue by simply assuming that Mr. Layton's appointed counsel had a "reasonable belief" that Mr. Layton would testify falsely. Upon what basis this assumption is made is unclear. A review of the record shows that far from defense counsel approaching the trial court with his suspicion that Mr. Layton may testify falsely, it was the trial court that instigated the initial discussion thereon *sua sponte*. The majority recognizes that the trial court engaged defense counsel in the following discussion:

"THE COURT: Mr. Ollar, you and your [co-]counsel are advised that if you do believe your client wants to take the stand and wants to perjure himself, you and your associate will not participate in the question and answer period.

"MR. OLLAR: Yes, sir. As you know, we've brought a potential conflict to the Court's attention once in the past, and I'd appreciate some instruction on how you actually wanted this to occur.

"THE COURT: Well, if he desires to take the stand and his testimony is not going to be truthful, then you will not participate whatsoever in the questioning of this witness."

What the majority conveniently neglects to mention is that defense counsel then responded to the trial court: "MR. OLLAR: Your Honor, I have no knowledge of what [the defendant] intends to say on the

stand." Nonetheless, the majority erroneously asserts that "the defendant [had] apparently [at that time] informed ... his attorney during his second trial, that he ... intended to perjure himself." 189 W.Va. at 488, 432 S.E.2d at 758.

Clearly, at that stage of the trial, defense counsel had no suspicion that Mr. Layton intended to commit perjury for he did not know what Mr. Layton would say. The trial court, again taking the initiative, went on to state:

"THE COURT: Well, you'll have ample time to find out between now and the time that he takes the stand. You can take him back in the conference room here and discuss it with him and he will have to tell you so that you can ask the appropriate questions ...

"MR. OLLAR: Thank you, sir.

"THE COURT: ... as to what he wants to tell the jury."

Later during the trial, after the State rested, a bench conference was held where the defendant sought to delay the trial in order to obtain the testimony of witnesses absent from the trial. The trial court refused to allow any delay. Apparently believing the bench conference ended, Mr. Layton left the bench conference. Immediately thereafter, still out of the presence of the jury, defendant's counsel briefly addressed the trial court as follows:

"MR. OLLAR: Your Honor, I want to put something on the record here. I do not want to put on a witness that insists on putting on—knowing what's going to be said, I want an instruction from you indicating that I can put him on the stand.

"THE COURT: If you will ask him what he remembers?

"MR. OLLAR: I don't want to ask him anything.

"THE COURT: Okay. You may go back down."

The foregoing is the complete extent of the record showing the basis upon which defense counsel believed that Mr. Layton

**5.** It has been stated, for obvious reasons, that a lawyer will rarely "know" that his client intends to commit perjury. *Whiteside v. Scurr*, 744 F.2d 1323 (8th Cir.1984), *rev'd on other grounds sub nom., Nix v. Whiteside, supra.*

would testify falsely. In essence, defense counsel offered no basis, nor was one asked for by the trial court.

The majority cites to *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). *Nix,* however, is patently distinguishable from this case. In *Nix,* the defendant moved for a new trial after the jury convicted him of second-degree murder. The motion for a new trial was based upon the defendant's assertion that he was denied a fair trial because his defense counsel had threatened to withdraw if the defendant committed perjury. That issue was not raised before the trial court during trial. The trial court, in a post-trial hearing, made specific findings that the facts surrounding the potential perjury were as related by defense counsel, thus rejecting the defendant's allegations. *Nix,* 475 U.S. at 162, 106 S.Ct. at 992, 89 L.Ed.2d at 131–32.

*Nix* provides no guidance for situations where no record is made concerning the validity of a defense counsel's "reasonable belief" that his client may commit perjury. However, the Eighth Circuit Court of Appeals squarely addressed this issue in *United States v. Long,* 857 F.2d 436 (1988), *cert. denied sub nom., Jackson v. United States,* — U.S. —, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991). The facts in *Long* bear resemblance to those in the present case. In *Long,* defense counsel approached the trial court after the government rested its case and informed the court that he was "concerned" about the potential testimony of the defendant. He also informed the trial court that he had advised the defendant not to take the stand. At that point, the trial court excused everyone from the courtroom but defense counsel, the defendant, and a United States Marshal. Defense counsel then informed the trial court that he may have to withdraw based upon the potential testimony of the defendant. The trial court informed the defendant that (1) he had a right to testify, but (2) defense counsel could not elicit untrue evidence. The defendant responded that he understood.

The trial court also informed the defendant that, if he elected to testify, he only could do so by giving a narrative statement without questioning by defense counsel. The trial court then cryptically stated to the defendant that if defense counsel found "things which he believes to be not true ... he may have other obligations at that point." 857 F.2d at 444. The trial court cautioned the defendant again about the "obligations" of defense counsel and defendant's right to testify. The defendant informed the court that he would not testify.

Upon appeal, the Eighth Circuit Court of Appeals noted that, unlike *Nix,* there was nothing in the record of *Long* to show that the defendant would have testified falsely if he took the stand. The *Long* court described the absence of such a showing as "crucial": "In terms of a possible violation of [the defendant's] rights, this is crucial. If ... [defense counsel] had no basis for believing [the defendant] would testify falsely and [the defendant], in fact, wanted to testify truthfully, a violation of his rights would occur." 857 F.2d at 445. The Court of Appeals noted its rule that defense counsel must have a "firm factual basis" for believing his client will testify falsely before taking any action to prevent such testimony:

> "Counsel must act if, but only if, he or she has 'a firm factual basis' for believing that the defendant intends to testify falsely or has testified falsely.... *It will be a rare case in which this factual requirement is met.* Counsel must remember that they are not triers of fact, but advocates. In most cases a client's credibility will be a question for the jury." 857 F.2d at 445, *citing Whiteside v. Scurr,* 744 F.2d 1323, 1328, *rev'd on other grounds sub nom., Nix v. Whiteside, supra.* (Emphasis added).

The Court of Appeals held that an evidentiary hearing on that issue would be necessary because the record did not reveal whether defense counsel had a "firm factual basis" for his belief that the defendant may testify falsely.

In this case, the record reveals no basis whatsoever for defense counsel's belief

that Mr. Layton would testify falsely. In such a situation, the need for the type of evidentiary hearing ordered in *Long* is obvious. At a minimum, the record should reveal that defense counsel attempted to persuade the defendant not to testify perjuriously. As the Supreme Court stated in *Nix:* "It is universally agreed that at a minimum the attorney's first duty when confronted with a proposal for perjurious testimony is to attempt to dissuade the client from the unlawful course of conduct." 475 U.S. at 169, 106 S.Ct. at 996, 89 L.Ed.2d at 136.[6] (Citations omitted). In this case, there is simply nothing in the record to suggest that defense counsel performed this minimum duty. The need for an evidentiary hearing is thus even stronger here than in *Long*.

### III.

### A.

The majority inexplicably proceeds to a conclusion that the defendant made a knowing and intelligent waiver of his right not to be present at the bench conference. At this bench conference, the trial court permitted defense counsel to withdraw from questioning the defendant when the defendant testified on his own behalf.

The bench conference occurred when the defendant sought a brief recess to determine whether several of his witnesses would be available to testify. This recess was denied by the court. Angered at this ruling, the defendant left the bench conference and returned to counsel table. His counsel remained at the bench and then brought up the issue of whether he should examine the defendant. It was at this juncture that the court informed defense counsel that he should not examine the defendant. The defendant clearly had no knowledge of this ruling, as evidenced by his remarks when he took the stand to testify.[7]

The cases cited by the majority involving the waiver of a defendant's right to be present at trial involve those situations where a defendant voluntarily absents himself from the trial after being informed of his obligation and right to be present. Here, the defendant could not waive what he did not know had occurred. It is incredible to me that the majority could find a waiver in this case.

**6.** The majority cites with approval The Committee on Professional Ethics of the Connecticut Bar Association's conclusion that, where a client insists on committing perjury, a lawyer "should attempt to persuade the defendant to testify in narrative fashion." 189 W.Va. at 484, 432 S.E.2d at 754. It is clear from the record in this case that the defendant was completely surprised by the trial court's ruling that he must testify in narrative form, and that no such discussion with his lawyer as advocated by the Connecticut Bar Association Committee occurred.

**7.** The record reveals the following colloquy:
"THE COURT: Do you desire to testify in this proceeding?
"THE DEFENDANT: Yes, I do.
"THE COURT: You do?
"THE DEFENDANT: Yes, sir.
"THE COURT: You may proceed with your testimony. Come and take the stand and be sworn.
"WHEREUPON, TIMOTHY LAYTON, having been duly sworn in open court by the Clerk of the Court, testified as follows:
"THE COURT: Mr. Ollar has requested that he not be required to ask you any questions.

"[THE DEFENDANT]: You mean my counsel is not going to assist me on the stand?
"THE COURT: That's correct. You may tell the jury your name and address and what you want them to know.
"THE DEFENDANT: But you're asking me to testify here and violate my 6th Amendment right to counsel.
"THE COURT: No. I told you what your rights were and advised you of that this morning, and your attorney has certain rules that he has to go by. If you desire to tell the jury what you want them to hear about this proceeding, you may now tell them.
"THE DEFENDANT: But without counsel ...
"THE COURT: Your counsel will not ask the questions to you.
"THE DEFENDANT: Well, don't you think, sir, don't you think that would cast a doubt on this jury?
"THE COURT: Sir?
"THE DEFENDANT: Don't you think that casts a doubt on this jury?
"THE COURT: No.
"THE DEFENDANT: Why my counsel won't talk to me?

 \* \* \* \* \* \*

"THE COURT: You may proceed."

This case bears some analogy to *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975), where the attorneys convened in the judge's office to consider how to deal with a witness who wished to recant earlier testimony. The defendant was not invited to this conference and we held this violated his constitutional right to be present. Our rule on this point is contained in Syllabus Point 6 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977):

> "The defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless."

I cannot conceive of any reasonable argument that could be made to justify this critical decision of whether counsel should examine the defendant being made without the presence of the defendant. There is absolutely no claim made that the defendant was asked to return to the bench and refused to do so. The only conclusion that can be rationally made is that his constitutional right to be present was simply ignored.

### B.

Moreover, the related question of the defendant's Sixth Amendment right to have his counsel examine him is brushed away by the majority by citing Syllabus Point 7 of *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988).[8] In *Neuman*, we dealt with a trial court's obligation to inform the defendant of the rights he would be giving up if he elected not to testify on his own behalf at trial. Here, the defendant elected to testify; thus, the *Neuman* principle is not applicable and cannot be applied to waive defendant's Sixth Amend-

ment right to the assistance of counsel when he took the stand. What I have said in Part I, *supra*, regarding the Sixth Amendment right to counsel and its waiver applies with equal force here.

### C.

The trial court compounded its error even further when, in essence, it announced, in open court with the jury present, that defense counsel believed the defendant would commit perjury on the stand. This announcement occurred after the defendant agreed to testify and was sworn in. The trial court stated in the jury's presence that defense counsel had requested that he not be required to ask the defendant any questions. When the defendant expressed his surprise at this pronouncement and protested, the trial court responded that defense counsel "has certain rules that he has to go by."

A similar situation arose in *Lowery v. Cardwell*, 575 F.2d 727 (9th Cir.1978), where the trial court sat without a jury. In that case, defense counsel was in the process of examining the defendant when defense counsel abruptly asked for a recess and the trial court removed defense counsel to its chambers. There, the defense counsel sought to withdraw. No explanation was given, but his request for a recess came immediately after the defendant denied committing the crime for which he was charged. The Ninth Circuit Court of Appeals found that where a fact-finder is warned by defense counsel, either explicitly or implicitly, that the defendant's defense is based upon false testimony, the fact-finder becomes "disabled ... from judging the merits of the defendant's defense." 575 F.2d at 730. That court made a distinction between cases where a defense counsel declines to take action and situations

---

8. Syllabus Point 7 of *Neuman* states:

"A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right."

where the ethical quandary is all but announced to the fact-finder:

"In our view, mere failure to pursue actively a certain course of defense, which counsel ethically is precluded from actively pursuing, cannot be said to constitute denial of fair trial. While a knowledgeable judge or juror, alert to the ethical problems faced by attorneys and the manner in which they traditionally are met, might infer perjury from inaction, counsel's belief would not appear in the clear and unequivocal manner presented by the facts here. There may be many reasons for failure actively to pursue a particular line of defense. And in the weighing of competing values in which we are engaged ... the integrity of the judicial process must be allowed to play a respectable role; the concept of due process must allow room for it.

"The distinction we draw is between a passive refusal to lend aid to perjury and such direct action as we find here—the addressing of the court in pursuit of court order granting leave to withdraw. By calling for a judicial decision upon counsel's motion in a case in which the judge served as fact finder, this conduct affirmatively and emphatically called the attention of the fact finder to the problem counsel was facing." 575 F.2d at 731. (Footnote omitted).

In the case at bar, the trial court implicitly informed the jury that defense counsel was, at the very least, at odds with his client. The fact that defense counsel refused to examine his own client and that this was due to "rules that he has to go by," all but announced to the jury that defense counsel believed his client would lie to the jury. Such a situation clearly disabled the jurors from judging the merits of the defendant's defense, and he was denied a fair trial.

### D.

After the defendant testified in narrative form, and after the State was permitted to cross-examine him, defense counsel sought permission of the trial court to allow the defendant to continue his narrative testimony, stating: "Sir, if I might, [the defendant] has not fully had an opportunity to fully describe what he alleges happened that day." This was, in essence, a request for redirect examination. The trial court denied the foregoing request.

In his very brief narrative testimony, the defendant made only cursory remarks relating to the facts of the case although he did deny participating in the crime. It seems abundantly clear that the defendant's testimony was brief and disjointed, mostly because he was completely unprepared to testify in narrative form without the aid of questioning by his stand-by counsel. Defense counsel sought to limit the already measurable prejudice to the defendant by asking that the defendant be permitted to fully tell his story. The trial court denied this request, stating simply that the defendant had his opportunity the testify and the State already had cross-examined him. Clearly, the Sixth Amendment right to counsel, which has been previously discussed, was violated at this point.

Although a trial court may exercise reasonable control over the mode and order of interrogating witnesses, under Rule 611(a) of the West Virginia Rules of Evidence, this control may not be exercised in such a way that the trial court abuses its discretion. In *State v. Armstrong*, 179 W.Va. 435, 442, 369 S.E.2d 870, 877 (1988), we stated:

"Rule 611(a) of the *West Virginia Rules of Evidence* provides: 'The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.' This evidentiary rule is consistent with the common law in this State: 'A trial court has wide latitude in the conduct of a trial, and particularly in matters pertaining to the examination of witnesses, and its rulings in relation to the examination of witnesses will not be reversed

except when there has been a plain abuse of its discretion.' Syl. pt. 2, *Payne v. Kinder,* 147 W.Va. 352, 127 S.E.2d 726 (1962). The discretion of the trial court to control the mode of interrogation of witnesses has been recognized in criminal cases in this State. *See* Syl. pt. 6, *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982) (leading questions). In practice, *abuse of this discretion is more often found when the trial court has unduly curbed the examination* than when the trial court has permitted an undue extension of the examination. *State v. Altergott,* 57 Haw. 492, 506, 559 P.2d 728, 737 (1977)." (Emphasis added).

It is clear to me that the trial court abused its discretion when it denied the defendant an opportunity to present his testimony, albeit in the form of a redirect examination to the jury. Preventing such testimony of the defendant did not further any of the goals outlined in Rule 611(a) of the Rules of Evidence. Rather, it had the effect of denying the unprepared defendant, who already was prejudiced by the surprise responsibility of testifying in narrative form, his right to testify.

## IV.

Finally, the majority makes the bizarre assertion that, "[i]f the question of perjury had arisen for the first time during the trial which underlies the present appeal, it could have been appropriate for the trial court to have declared a mistrial." 189 W.Va. at 484, 432 S.E.2d at 754. Again, I must disagree. The foregoing assertion is entirely groundless in any law that I can find.

When a question of perjury arises, whether it be in an initial trial or a subsequent retrial, the procedure followed by the trial court should be the same. In my opinion, if, and only if, the defense counsel has a "firm factual basis" for his assertion that his client may commit perjury, and if he has attempted to dissuade his client from so testifying, the trial court may permit defense counsel to forego questioning the defendant.

Prior to placing the defendant on the stand, however, the defendant must be made aware that his counsel will be unavailable to question him and, if he chooses to testify, that such testimony must be in narrative form.[9] I can see no reason to

**9.** There is debate among authorities and commentators regarding the propriety of narrative testimony in situations where a lawyer suspects his client may commit perjury. Several courts have approved the use of narrative testimony in such a situation. *See People v. Guzman,* 45 Cal.3d 915, 248 Cal.Rptr. 467, 755 P.2d 917 (1988), *cert. denied,* 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989); *Coleman v. State,* 621 P.2d 869 (Alaska 1980), *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *State v. Fosnight,* 235 Kan. 52, 679 P.2d 174 (1984); *People v. Lowery,* 52 Ill.App.3d 44, 9 Ill.Dec. 41, 366 N.E.2d 155 (1977). However, as the majority notes, the Official Comment to Rule 3.3 of the Rules of Professional Conduct expressly disapproves of a narrative approach, stating: "[T]his compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel." Another commentator has stated the following:

"The narrative approach allows the lawyer to refrain from active participation in the client's testimony while giving the client the opportunity to testify, thereby avoiding direct examination on matters in which the lawyer believes the client will commit perjury. Moreover, the lawyer may not argue to the jury the client's known false version of the facts as worthy of belief. *Butler v. United States,* 414 A.2d 844 (D.C.1980). One commentator, who prefers the narrative approach to mandatory withdrawal, points out that withdrawal raises the danger of a succession of withdrawal motions and consequent trial delays. Lefstein, *Client Perjury in Criminal Cases: Still in Search of an Answer,* 1 Geo.J.Legal Ethics 521 (1988). Nevertheless, the narrative approach does not necessarily protect the client from an implicit disclosure of confidential communications, at least to the trial judge and the prosecutor, who may easily surmise the most likely reason for the lawyer's approach. Because of this implicit disclosure, the prosecutor may be barred from inviting the jury to draw inferences from defense counsel's conduct. *See State v. Long,* 148 Ariz. 295, 714 P.2d 465 (App.1986).

"Arguably, this approach undermines the lawyer's duty not to assist, even passively, in the client's attempt to perpetrate a fraud or mislead the court."

Center for Professional Responsibility, American Bar Association, *Annotated Model Rules of Professional Conduct* 341 (2d ed. 1992). *See* 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 3.3:212–220 (1992);

declare a mistrial every time a defendant threatens to commit perjury in an initial trial. If the foregoing procedure is followed, there will be no need to declare a mistrial at either an initial trial or any subsequent retrial.

### V.

For the foregoing reasons, I would reverse the defendant's conviction and remand this case for a new trial. I am authorized to state that Justice Thomas E. McHugh joins me in this dissent.

Carol T. Rieger, *Client Perjury: A Proposed Resolution of the Constitutional and Ethical Issues,* 70 Minn.L.Rev. 121 (1985); Brent R. Appel, *The Limited Impact of Nix v. Whiteside on Attorney–Client Relations,* 136 U.Penn.L.Rev. 1913 (1988).

In *State v. Armstrong,* 179 W.Va. 435, 369 S.E.2d 870 (1988), we stated in Syllabus Point 3: "The trial court is vested with sound discretion to permit a witness to testify in narrative form, rather than by question and answer." In *Armstrong,* the State's expert witness sought to testify in narrative form and was permitted to do so. We affirmed this mode of testimony based upon the fact that the testimony was expert in nature. 179 W.Va. at 443, 369 S.E.2d at 878. *See* W.Va. R.Evid. 702.