THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND McKINNEY, Defendant-Appellant.

First District (4th Division)   No. 76-1346

Opinion filed June 22, 1978.—Rehearing denied July 24, 1978.

62

James J. Doherty, Public Defender, of Chicago (Aaron L. Meyers and Peter J. Hickey, III, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth McCurry, and Carol A. Kearney, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Raymond McKinney was charged by complaint with seven misdemeanors. After a jury trial in the circuit court of Cook County, he was found guilty of aggravated assault (Ill. Rev. Stat. 1975, ch. 38, par. 12—2(a)(1)), resisting a peace officer (Ill. Rev. Stat. 1975, ch. 38, par. 31—1), and unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(4)). He was sentenced to serve 150 days in the House of Correction for aggravated assault, fined $50 plus court costs for resisting a peace officer, and sentenced to 2 years of probation for unlawful use of a weapon. Defendant appeals from his convictions, and we affirm.

The issues presented for review are (1) whether defendant waived the issues he now raises on appeal by his failure to make an oral or written motion for a new trial; (2) whether defendant waived his right to counsel within the meaning of Illinois Supreme Court Rule 401(a); (3) whether the trial court properly exercised its discretion in limiting the participation of

standby counsel; and (4) whether defendant was properly convicted of resisting a peace officer under the circumstances.

The record reveals the facts to be as follows: Defendant was arrested at 6145 North Winthrop on December 27, 1975, at approximately 10 p.m. Officer Pusateri, one of the arresting officers, testified that he and his partner were called to 6145 North Winthrop that night to assist another police unit in apprehending a man with a gun. At the scene, Pusateri found a man, whom he identified at trial as the defendant, crouching against a wall. When Pusateri told the defendant to step into plain view, defendant pulled a .38 caliber revolver from his belt, cocked it, and pointed the weapon at the officer. Pusateri and another officer then lunged at the defendant and disarmed him. He fought back, kicking, biting, and striking the officers, but he was subdued and arrested after a substantial struggle.

On January 21, 1976, the defendant appeared in court and the public defender of Cook County was appointed to represent him. On May 5, 1976, the defendant appeared in court and informed the court that he wished to represent himself. The public defender offered to withdraw, but the court refused to grant leave to withdraw at that time. At the court's insistence, the defendant agreed to submit to a psychiatric examination prior to any further proceedings. He was examined and found to be antisocial with a personality disorder but "not psychotic." It was recommended that he be returned to court for proceedings "as evidence warrants." On June 14, 1976, represented by the public defender, defendant appeared in court and again insisted that he wished to present his own defense. He continued to assert his right to defend himself despite the court's efforts to dissuade him. The court then advised defendant of his right to counsel and asked if he wished the assistant public defender to remain with him in an advisory capacity. The defendant replied, "I'd appreciate that," and the assistant public defender was appointed on a standby basis.

The defendant and his standby counsel, Mr. Harrington, conducted the voir dire examination of prospective jurors. Prior to the trial, the defendant was instructed by the court as to the phases of a jury trial and the purpose of each phase. Mr. Harrington then made a motion to exclude witnesses and requested that the jury be instructed regarding the dismissal of one battery complaint. The defendant delivered his own opening statement and conducted the cross-examinations of the State's witnesses. During the trial, defendant was allowed to consult freely with his standby counsel and made several objections on the grounds that certain matters were hearsay, beyond the scope of cross, or lacking in proper foundation. Mr. Harrington participated in a number of side-bar

conferences during the trial. He argued against the admission into evidence of a certain document, and argued motions for a mistrial and directed verdict. He presented jury instructions and objected to certain instructions tendered by the State. He also presented and argued a motion to reopen the defense case prior to the verdict. Only once during the trial did the court limit the participation of defendant's standby counsel. This occurred when Mr. Harrington objected directly to a response elicited during the direct examination of Officer Pusateri.

After defendant was found guilty of aggravated assault, resisting a peace officer, and unlawful use of weapons, Mr. Harrington requested a stay of mittimus to prepare for a hearing in aggravation and mitigation since defendant wished the public defender to act as his attorney at sentencing. Neither the defendant nor the public defender made an oral or written motion for a new trial.

■■ The State argues that defendant waived his right to appeal any error in the trial court by his failure to make a motion for a new trial. According to the State, a defendant's failure to raise an issue in his motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review; this waiver applies to constitutional questions as well as other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) While this is an accurate statement of the law, we would remind the State that the law also enables this court, in its discretion, to consider issues not properly preserved for review where substantial rights of the defendant may be affected. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).) We believe that it is particularly appropriate to consider such issues here. See *People v. McGraw* (1958), 13 Ill. 2d 249, 149 N.E.2d 100.

Defendant first contends that his waiver of counsel was ineffective, and, therefore, his cause must be remanded for a new trial because the trial court failed to comply with the requirements of Supreme Court Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a)). This rule requires that a trial court, before permitting any waiver of counsel, address a defendant in open court and admonish him of (1) the nature of the charge, (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court. Here, the trial court advised the defendant only of his right to counsel and that counsel would be appointed for him by the court. The defendant also argues that the trial court abused its discretion when it allowed defendant to waive his right to counsel and represent himself. According to defendant, competency to waive counsel may involve a higher standard than competency to stand trial and, therefore, special scrutiny must be given to purported waivers of counsel by a trial court.

(See *People v. Heral* (1976), 62 Ill. 2d 329, 342 N.E.2d 34.) He concludes that had special scrutiny been given in the instant case, the trial court could not reasonably have permitted him to waive his constitutional right to counsel.

■■ We find that defendant did not waive his right to counsel within the meaning of Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a)), and, therefore, the trial court was not required to administer to defendant the admonitions made mandatory by that rule. (*People v. Lindsey* (1974), 17 Ill. App. 3d 137, 141, 308 N.E.2d 111, 115.) We believe that the *Lindsey* case is dispositive of this issue. In *Lindsey*, the defendant informed the court that he wished to represent himself but requested that his court appointed attorney remain "on call" to assist him. The trial court granted defendant's request and did not give defendant the admonitions of Rule 401(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 401(a)). The defendant argued on appeal that he did not effectively waive his right to counsel because the court failed to comply with the requirements of that rule. The *Lindsey* court determined that a waiver of counsel occurs when a defendant "* * * informs a court that he does not wish counsel; that he wants to stand alone." (*Lindsey*, at 140.) The court held in *Lindsey*, at page 141, that:

> "Where, however, a defendant requests that he be allowed to conduct his own defense with the assistance of a court appointed lawyer, he does not waive the right to counsel. He seeks, instead, the best of both worlds: freedom to conduct his own defense and benefit from the assistance of counsel. In such a case, it is within the trial court's discretion to decide whether defendant may have an attorney to assist and advise him. [Citations.]
>
> In this case, defendant told the trial court that he wanted to conduct his own defense, with his lawyer remaining in the case to assist him. It is true, as defendant contends, that the trial judge did not in open court determine whether he understood the nature of murder and attempted robbery. Nor did the judge in open court determine whether defendant understood the minimum and maximum sentences provided by law for the two offenses. Nonetheless, we are of the opinion that the rule admonitions need not have been given defendant because, by his request that he be allowed to conduct his own defense with his court-appointed lawyer assisting him, he did not make a waiver of counsel within the meaning of Supreme Court Rule 401(a)."

Furthermore, since the instant defendant did not waive his right to counsel, we find that if the trial court was required to give special scrutiny to defendant's competency to waive counsel and to conduct his own defense, it was not in error if it failed to do so.

The defendant next contends that the trial court abused its discretion by refusing to allow defendant's standby counsel to assist him at all times during the trial. Defendant cites *People v. Lindsey* as supportive of this contention. However, pertaining to this issue, we find the *Lindsey* case should be distinguished from the case at hand.

■■ In *People v. Lindsey* (1974), 17 Ill. App. 3d 137, 308 N.E.2d 111, the appellate court first noted that when the trial court granted defendant leave to conduct his own defense he could have been required to elect between the right to represent himself and the right to assistance of counsel (*Lindsey*, at 143), that is, it would not have been an abuse of discretion for the trial court to have refused defendant the opportunity to conduct his own defense with the assistance of counsel. (*Lindsey*, at 143.) However, the *Lindsey* court held that where the trial court initially granted defendant's request to conduct his own defense *with the assistance of court appointed counsel*, it was an abuse of judicial discretion to later, at crucial phases of the trial and where defendant's requests for assistance were reasonable, to prevent his lawyer from assisting him. (*Lindsey*, at 144.) The facts of the *Lindsey* case reveal that the limitations imposed upon that defendant and his assisting counsel by that trial court were severe. However, the record before us fails to reveal any facts indicative of any abuse of discretion by this trial court. The record indicates that the defendant was allowed to consult freely with his co-counsel throughout the duration of his trial. His court appointed co-counsel participated directly in the voir dire examination of prospective jurors, made and argued motions before the court in defendant's behalf, and participated in numerous side-bar conferences. In only one instance during the trial did the court limit the participation of defendant's assisting counsel. As previously mentioned, this occurred when the lawyer objected directly to a response elicited during defendant's cross-examination of a witness. We cannot find in this one instance a basis sufficient to support a finding that the trial court abused its discretion.

■■ Finally, defendant contends he was improperly convicted of resisting a peace officer (Ill. Rev. Stat. 1975, ch. 38, par. 31—1) because the facts clearly establish that he was never informed that he was under arrest. He argues that this is fatal to his conviction on this charge and maintains that his motion for a directed finding on this charge should have been granted. We disagree.

Section 31—1 (Ill. Rev. Stat. 1975, ch. 38, par. 31—1) provides as follows:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor."

We find that in the instant case the police officers were performing an

authorized act within their official capacity, that is, the apprehension and arrest of the defendant when he knowingly and violently resisted their authority. Officer Pusateri testified that he and his partner were called to the scene of the incident specifically to aid in the apprehension of the defendant. When the officers located him in the hallway, they were dressed in full uniform and there was enough light in the hall to see clearly. When Officer Pusateri requested that defendant make himself visible and show his hands, defendant aimed a gun at the officer and threatened him with violence. When the officer, assisted by his fellow officers, attempted to disarm him, defendant fought and continued to do so even after he was disarmed and as the officers attempted to handcuff him. Under the circumstances, defendant should have understood that he was under arrest and ceased his violent resistance. An arrest has been defined as a seizure of the person, accomplished by the actual restraint of the person or by his submission into custody. (*People v. Howlett* (1971), 1 Ill. App. 3d 906, 909, 274 N.E.2d 885, 887.) The *Howlett* court determined that every arrest involves three elements: (1) Authority to arrest, (2) assertion of that authority with the intention to effect an arrest, and (3) restraint of the person to be arrested. (*Howlett*, at 909-10.) The court also stated that:

"Although the intention to arrest must be communicated, and defendant's understanding of that intent is a factor to be considered, '[t]he test must be not what the defendant ° ° ° thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' " (*Howlett*, at 910.)

We believe that a reasonable man, innocent of any crime and standing in the defendant's shoes, would have perceived the officers' intention to arrest him as they struggled to restrain and handcuff him. Therefore, it was not necessary for the officers to employ the specific words "You are under arrest," in order for defendant's arrest to be properly effectuated under the circumstances.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.