NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190182-U

NO. 4-19-0182

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 25, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| ROBERT S. ALLISON, | ) | No. 16CF753 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the evidence sufficient to sustain defendant's conviction for resisting a peace officer.

¶ 2    Following a jury trial, defendant, Robert S. Allison, was convicted of resisting a peace officer and subsequently sentenced to three years' imprisonment. Defendant appeals his conviction, arguing the evidence was insufficient to prove his guilt beyond a reasonable doubt. Defendant contends the State failed to prove that (1) he knowingly resisted arrest and (2) his physical acts constituted resistance. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charge

¶ 5        The State charged defendant with resisting a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2014)), alleging that on October 29, 2016, defendant "knowingly resisted or obstructed the performance of Brett Stine of an authorized act within his official capacity, being the arrest of [defendant], knowing [Stine] to be a peace officer engaged in the execution of his official duties and the violation was the proximate cause of an injury to [Stine] ***."

¶ 6                                B. The Jury Trial

¶ 7        In September 2018, defendant's case proceeded to a jury trial.

¶ 8                                1. *The State's Evidence*

¶ 9                                a. Sergeant Michael Vice

¶ 10        Michael Vice, a sergeant with the Georgetown Police Department, testified that at approximately 10 p.m. on October 29, 2016, while on patrol, he was notified of a possible drunk driver in the area and given a description of the vehicle. Vice located the vehicle at a nearby Casey's gas station and, along with Georgetown Police Officer Brett Stine, made contact with a male—identified as defendant—at a gas pump. Defendant informed Vice that he had been drinking but his girlfriend, Sarah Shuman, was driving. As Vice was running a check on Shuman's driver's license, he received information that defendant was a suspect in a criminal damage to property investigation in Danville. Vice detained, but did not arrest, defendant while awaiting further information from the Danville Police Department. Vice described defendant as being "[v]ery loud" and "very aggressive" towards the officers and repeatedly demanding that they "either arrest him or charge him" if he was not free to leave. Defendant recorded the officers with his cell phone at various times throughout the interaction; the recordings were admitted into evidence and published to the jury.

¶ 11　　　　　At one point during the interaction, while Vice was standing in front of his patrol car, defendant became "very agitated[,]" pulled out his phone, and demanded the officers charge him or let him leave. When Vice again informed defendant he was not free to leave, defendant approached Vice and "about struck [him] in the nose with his cell phone." Vice testified that he perceived defendant was going to hit him because defendant was very agitated and "when he approached me, he came at me real fast with the phone, almost striking my nose." According to Vice, he then removed the phone from defendant's hand and advised him he was under arrest; however, Vice admitted on cross-examination that he did not note in his arrest report that he advised defendant he was under arrest. Vice further testified defendant "[would not] comply by putting his hand behind his back and he was tensing up" and "pulling away." Because defendant would not comply, Officer Stine assisted Vice with the arrest. Defendant continued to pull away from both officers. Eventually, the officers were able to handcuff defendant and secure him in Officer Stine's vehicle.

¶ 12　　　　　　　　　　　　b. Judith Hutson

¶ 13　　　　　Judith Hutson, a cashier at Casey's, observed the interaction between defendant and the officers from the front door of the gas station, which she estimated was "[m]aybe 12, 13 [feet]" away. Hutson testified the officers appeared "to be kind of relaxed[,]" while defendant was "agitated" and repeatedly pointed his phone at the officers telling them that he was recording them. At one point, defendant stepped towards Vice and quickly "went toward him with the camera, the phone, like he was recording him." The phone did not touch Vice but was "almost in his face." According to Hutson, after defendant put his phone in Vice's face, "the next thing [she] kn[e]w they had him on the ground, handcuffing him." Hutson testified that she did not

observe defendant struggle or pull away from the officers, but she admitted she "might have missed a couple *** details ***."

¶ 14                                          c. Officer Brett Stine

¶ 15        Brett Stine, an officer with the Georgetown Police Department, assisted Vice in detaining defendant while they awaited a response from the Danville Police Department. According to Stine, defendant "was very agitated and sometimes aggressive towards officers, pulling out his cell phone several times, saying he was going to record the events." Stine stated he had no problem with defendant recording. Towards the end of the interaction, defendant approached Vice and "took his cell phone towards his face, nearly striking him in the face." Vice pushed the phone away from his face and attempted to place defendant in handcuffs. Defendant "was tensing up and trying to pull away from Officer Vice." At this point, Stine "moved in and attempted to gain control of [defendant's] other arm." Both officers advised defendant to stop resisting and place his hands behind his back, but defendant continued to pull away from Vice and Stine until all three fell to the ground on top of Stine's hand.

¶ 16                                          2. *Defendant's Evidence*

¶ 17                                          a. Sarah Shuman

¶ 18        Sarah Shuman, defendant's girlfriend of nine years, testified that while she and defendant were being detained by the officers at Casey's, defendant was "videotaping on his camera on his phone and he never once touched an officer or nothing. They all piled up on him like he was a football player." Shuman testified defendant was cooperating with the officers and he never physically struggled with them. According to Shuman, the officers simply "tackled him down on the concrete."

¶ 19                                          b. Defendant

- 4 -

¶ 20        Defendant testified that police officers approached him while he was getting gas at Casey's and questioned him about whether he punched a car window in Danville. The officers told defendant he was not under arrest, but he also was not free to leave until they finished their investigation. Defendant continually requested the officers charge him with a crime or allow him to leave. Defendant stated he began recording on his cell phone "for [his] safety and [the officers'] safety" because he did not "feel comfortable with all the cops that [were] pulling up on a case that [they] should have been free to go on." Defendant testified he never moved towards Vice with his cell phone but merely "zoom[ed]-in" on him with the video camera. Defendant further testified that once Vice made physical contact with him, he never struggled or pulled away. Instead, defendant "put [himself] in handcuff mode" and remained "in handcuff mode while [the officers were] on top of [him], assaulting [him]."

¶ 21                                      3. *Verdict*

¶ 22        Following presentation of the evidence, the jury found defendant guilty beyond a reasonable doubt.

¶ 23                              C. Posttrial Proceedings

¶ 24        Defendant filed a timely motion for a new trial, arguing, in relevant part, that the evidence was insufficient to sustain his conviction. The court denied defendant's motion and subsequently sentenced him to three years' imprisonment.

¶ 25        This appeal followed.

¶ 26                                  II. ANALYSIS

¶ 27        On appeal, defendant argues the evidence was insufficient to prove him guilty of resisting a peace officer beyond a reasonable doubt. Defendant contends the State failed to prove that (1) he knowingly resisted arrest and (2) his physical acts constituted resistance.

- 5 -

¶ 28                    A. Standard of Review and the Charged Offense

¶ 29         When reviewing the sufficiency of the evidence, the "critical inquiry" is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. [Citation.] Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphases in original and internal quotation marks omitted.) *Id.* at 318-19; see also *People v. Ehlert*, 211 Ill. 2d 192, 202, 811 N.E.2d 620, 625 (2004). "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses[,]" as "it is the responsibility of the trier of fact to 'fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. Cooper*, 194 Ill. 2d 419, 431, 743 N.E.2d 32, 40 (2000) (quoting *Jackson*, 443 U.S. at 319). Reviewing courts will not set aside a conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276 (1985).

¶ 30         Here, defendant was convicted of resisting a peace officer (720 ILCS 5/31-1(a), (a-7) (West 2014)). This offense required the State to prove four essential elements beyond a reasonable doubt: (1) defendant knowingly resisted Officer Stine's attempt to arrest him; (2) Officer Stine was performing an authorized act in his official capacity; (3) defendant knew Officer Stine was a peace officer; and (4) defendant's conduct was the proximate cause of Officer Stine's injury. See *id.*; *People v. Baskerville*, 2012 IL 111056, ¶ 32, 963 N.E.2d 898.

Defendant challenges only the sufficiency of the evidence with respect to the first element; thus, we must determine, after viewing the evidence in the light most favorable to the State, whether any rational juror could have found defendant knowingly resisted Officer Stine's attempt to arrest him beyond a reasonable doubt.

¶ 31                                    B. The Sufficiency of the Evidence

¶ 32          Defendant argues the evidence at trial was insufficient to sustain his conviction because the State failed to prove that (1) he acted with knowledge of his arrest and (2) his physical acts constituted resistance.

¶ 33                                    1. *Whether Defendant Acted Knowingly*

¶ 34          Defendant argues the evidence was insufficient to prove he knowingly resisted arrest because it shows he "was not consciously aware of the circumstances of his arrest and did not gain that awareness in the seconds it took to place him in handcuffs ***." Defendant's argument relies heavily on the fact that Vice, who was impeached on cross-examination, was the only witness to testify he told defendant he was under arrest. Defendant essentially contends no rational juror could have believed Vice told defendant he was under arrest because Vice omitted this "critical fact" from his arrest report and no other evidence corroborates this portion of Vice's testimony. The State, on the other hand, asserts this omission merely raised an issue regarding Vice's credibility, which was properly resolved by the jury and should not be disturbed on appeal. Alternatively, the State contends that even assuming, *arguendo*, Vice never advised defendant he was under arrest, the remaining evidence was nonetheless sufficient to prove defendant knew he was being arrested.

¶ 35          Section 31-1(a) proscribes only knowing conduct. See 720 ILCS 5/31-1(a) (West 2014). Thus, a conviction under this section cannot be sustained unless the defendant acted with

- 7 -

knowledge of their arrest. See, *e.g.*, *People v. Borders*, 2020 IL App (2d) 180324, ¶ 54 ("One cannot knowingly resist an arrest until one knows that it is occurring."). A defendant acts with knowledge of the circumstances of their arrest "when he or she is consciously aware *** that those circumstances exist." 720 ILCS 5/4-5(a) (West 2014). Knowledge of an arrest may be established by evidence police officers explicitly told the defendant he or she was under arrest. See *Borders*, 2020 IL App (2d) 180324, ¶ 54 (citing *People v. Thompson*, 2012 IL App (3d) 100188, ¶¶ 6-7, 14, 966 N.E.2d 1147). However, "[t]he statement, 'you are under arrest' is not absolutely necessary to create the knowledge that one is being arrested." *Id.* ¶ 56. "Although the intention to arrest must be communicated, and [the] defendant's understanding of that intent is a factor to be considered, the test must be not what the defendant *** thought, but what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes." (Internal quotation marks omitted.) *People v. Howlett*, 1 Ill. App. 3d 906, 910, 274 N.E.2d 885, 887 (1971).

¶ 36        In *Borders*, the Second District reversed the defendant's conviction for resisting a peace officer after concluding the evidence was insufficient to prove he knowingly resisted arrest. *Borders*, 2020 IL App (2d) 180324, ¶ 59. There, the defendant argued, in part, the State failed to prove he knew he was being arrested because "no one told him that he was under arrest until after he was already handcuffed on the ground." *Id.* ¶ 53. The State, citing *People v. McKinney*, 62 Ill. App. 3d 61, 378 N.E.2d 1125 (1978), argued the defendant should have known from the surrounding circumstances that he was under arrest even if police did not explicitly advise him of their intention to arrest him. *Id.* ¶ 57. The *Borders* court found the State's reliance on *McKinney* misplaced, distinguishing it as follows: "[In *McKinney*], the defendant responded to police requests to show himself by pulling out a gun and pointing it at an officer. [Citation.]

- 8 -

Because this was a criminal act in itself, the defendant could have had no reasonable belief that he would not be immediately arrested ***." *Id.* (citing *McKinney*, 62 Ill. App. 3d at 63). Unlike the defendant in *McKinney*, the defendant in *Borders* was not only never advised he was being arrested, but he also "had not committed any crime, nor did the police have probable cause to believe that he had committed one." *Id.* ¶ 59.

¶ 37        Here, Sergeant Vice's testimony that he "[a]dvised [defendant] he was under arrest" was sufficient to prove defendant had knowledge of his arrest. See *id.* ¶ 54 (noting that because "the arresting officer told the defendant that he was under arrest ***, the moment when the defendant became aware that he was being arrested was clearly identifiable"). Defendant contends Vice's testimony could not be believed by any rational juror because it was "unsupported by the record and *** seriously undermined" by the omission of this detail from his arrest report. We disagree. Although in the video Vice is not heard telling defendant he is under arrest, this does not disprove Vice's testimony, as the video ends within seconds of Vice taking away defendant's phone and did not capture the entire sequence of events. Additionally, the fact Vice was impeached with the omission in his arrest report merely raised a question regarding his credibility, and it was the jury's responsibility to resolve any credibility issues. See, *e.g.*, *People v. Wallace*, 2020 IL App (1st) 172388, ¶ 30, 148 N.E.3d 883 ("Impeachment is a challenge to the credibility of the witness, and ultimately, it falls to the trier of fact to determine whether that challenge was successful, something we cannot determine on review." (Internal quotation marks omitted.)). Based on its verdict, the jury appears to have resolved the credibility issue in favor of the State, and we cannot say that doing so was so unreasonable as to require this court to overturn the conviction.

¶ 38          Alternatively, even assuming, *arguendo*, Vice never told defendant he was under arrest, the remaining evidence is nonetheless sufficient to prove defendant knew of his arrest. The critical moment during the incident was when defendant quickly moved his phone towards Vice's face. According to Vice, defendant, who was "very agitated" and acting aggressively, "came at me real fast with the phone, almost striking my nose"; Vice further testified he perceived defendant was going to hit him in the face. Stine testified defendant was "very agitated" and acting aggressively towards the officers. Stine asserted defendant "took his cell phone towards [Vice's] face, nearly striking him in the face." Hutson, the cashier at Casey's, testified Vice was "just standing [by a gas pump] minding his own business" when defendant quickly "went toward [Vice] with the phone, I mean it was like almost in his face." As for defendant's version, Shuman stated defendant never touched Vice and the officers simply tackled him to the ground and "piled up on him like he was a football player." Defendant testified he never approached Vice with his phone but merely "zoom[ed]-in" with the camera.

¶ 39          Viewing this evidence in the light most favorable to the State, defendant knew, or reasonably should have known, he would be arrested for nearly hitting a police officer in the face. As argued by the State, the evidence shows defendant committed a criminal act by nearly striking Vice in the face with his phone. See 720 ILCS 5/12-1(a) (West 2014) ("A person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery."); *id.* § 12-2(b)(4.1)(i) (defining aggravated assault as an assault committed against a peace officer performing their official duties). Defendant's response to the State's argument is that "[i]f the State believed the evidence supported a charge of assault it should have charged [him] accordingly ***." However, the charges the State ultimately chose to bring have no bearing on defendant's conscious

awareness of the circumstances as they existed at the time of the event in question. It would be unreasonable for a person to believe they would not be arrested for aggressively approaching a police officer during an investigatory detention and nearly striking that officer in the face with a cell phone.

¶ 40 Because the evidence, viewed in the light most favorable to the State, demonstrates defendant, who was agitated, aggressive, and while detained, assaulted Vice by "nearly striking him in the face" with his cell phone, a rational juror could have reasonably concluded defendant knew he would be immediately arrested.

¶ 41 2. *Whether Defendant's Physical Acts Constituted Resistance*

¶ 42 Defendant also argues the evidence was insufficient to prove his physical acts constituted resistance. Defendant contends "the State's evidence that [he] failed to put his arms behind his back, tensed up, and moved away from the officers was insufficient to establish the element of resistance ***."

¶ 43 For purposes of section 31-1(a), "resisting" means " 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat.' " *People v. Raby*, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968). Mere argument with a police officer does not constitute resistance. *Id.* Rather, the statute proscribes "only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." *Id.* "The acts of struggling or wrestling with a police officer are physical acts of resistance that will support a conviction for resisting a peace officer ***." *People v. McCoy*, 378 Ill. App. 3d 954, 962, 881 N.E.2d 621, 630 (2008). The physical act may be active, passive, or inactive. See *id.* at 964.

¶ 44        Here, viewing the evidence in the light most favorable to the State, a rational juror could have found defendant's physical acts constituted resistance. Vice testified that after he had removed the phone from defendant's hand, he told defendant to place his hands behind his back and attempted to handcuff defendant. Defendant would not "comply by putting his hands behind his back and he was tensing up" and "pulling away" from Vice as the officer attempted to handcuff him. Stine corroborated Vice's version of events, testifying defendant "was tensing up and trying to pull away from Sergeant Vice." Once Stine realized Vice could not handcuff defendant on his own, he "moved in and attempted to gain control of [defendant's] other arm." Stine testified that if defendant was not "actively pulling away and actively tensing up[,]" he would have had no reason to assist Vice. The officers were advising defendant to place his hands behind his back while they attempted to handcuff him, but defendant continued to "try to pull away from [them] and [they] eventually ended up falling onto the concrete ***." We cannot say that this evidence is so improbable or unsatisfactory as to preclude a rational juror from concluding defendant's physical acts constituted resistance. See, *e.g.*, *People v. Crawford*, 152 Ill. App. 3d 992, 993-95, 505 N.E.2d 394, 395-96 (1987) (evidence the defendant pulled away from police officers after arrest, struggled, and caused officers to use physical force to take him into custody was sufficient to support a conviction for resisting a peace officer).

¶ 45        We find defendant's arguments to the contrary unpersuasive. Defendant contends his acts were the result of "an instinctual and involuntary reflex" for which he cannot be held accountable. However, this conclusory assertion is incompatible with the evidence recited above. Defendant pulled away from Vice long enough for Stine to realize he needed to assist Vice. Even after Stine began assisting by attempting to gain control of defendant's other arm, defendant continued to pull away from both officers until all three of them fell to the ground. Such actions

cannot be described as resulting from an involuntary reflex. Defendant's additional argument that any resistance was *de minimis* and, thus, could not legally constitute unlawful resistance, is unsupported by any citation to authority and we reject it.

¶ 46                              III. CONCLUSION

¶ 47          For the reasons stated, we affirm the trial court's judgment.

¶ 48          Affirmed.